In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1369

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WALTER C. SMITH, III,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 06-cr-30070-DRH—**David R. Herndon**, *Chief Judge.*

ARGUED DECEMBER 9, 2008—DECIDED AUGUST 13, 2009

Before FLAUM, WOOD, and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* Police suspected Walter C. Smith III of selling drugs out of a pink house in Mulberry Grove, Illinois. They set up surveillance and controlled buys, which provided them with probable cause for the search warrants that they obtained on January 21, 2005, and May 17, 2006. In searching the premises, they retrieved large sums of money, surveillance equipment, firearms, and large quantities of cocaine and marijuana.

Smith was convicted of eight cocaine-related offenses based on this evidence, but he believes that the district court made two errors that entitle him to a new trial.

The first alleged error is the district court's denial of Smith's request for a *Franks* hearing, despite the fact that the search warrant affidavits contained certain acknowledged factual errors. Smith believes that these errors reflected a reckless disregard for the truth that renders the warrants invalid, while the government portrays them as an oversight and a scrivener's error. The district court sided with the government and denied Smith's request. Smith contends that the district court's second error was its failure to investigate or address adequately the effect of jury misconduct. Specifically, Juror No. 1, who was excused because he felt that he could no longer be impartial, told another juror that certain testimony was "hitting close to home." Smith argued that this potentially prejudiced the jury against him, but the district court saw no possible prejudice.

We affirm.

# I

On January 21, 2005, Inspector David Dunn obtained a search warrant for drugs and drug-related materials at 1837 Arkansas Avenue, Mulberry Grove, Illinois. The house was easy to recognize because it was pink-paneled. Dunn's search warrant affidavit described two covert drug buys he had orchestrated with Agent Michael McCartney. The first involved a confidential

informant who entered the residence next to 1837 Arkansas Avenue to buy cocaine from Edith Fletcher. The informant was wearing an eavesdropping device, which enabled Dunn to hear Fletcher say that she needed to run next door to retrieve the drugs. Dunn then watched her do just that, and the informant later turned over to the police the cocaine he had purchased from Fletcher.

The second drug buy involved Virgil T. Green, another subject who was cooperating with the police. The affidavit indicated that Green entered the pink house and purchased cocaine, but this was not strictly accurate. In fact, the transaction occurred in the front yard. The government provided the following explanation for the discrepancy. The lay of the land prevented extended stationary surveillance of the pink house, and so the police had to drive around the residence instead, leaving gaps in the time when the house would be visible. During the purchase, the front of the house was not in sight. The police relied on Green's recitation of events to fill in the gap, and he merely stated that he bought the drugs from Smith. They assumed (wrongly) that it occurred inside the pink house when it did not. The government thus concedes the presence of an error in the affidavit, but claims that it was an innocent oversight.

On May 17, 2006, Dunn obtained a second search warrant for drugs and drug-related materials at 1837 Arkansas Avenue. Dunn's 2006 search warrant affidavit referred to the 2005 affidavit and claimed that three

controlled buys had been conducted at the residence in January 2005. Once again, there was an error; in fact, only the two transactions described above had taken place. The government again concedes the mistake but labels it a "scrivener's error."

The execution of the 2005 search warrant yielded 43.5 grams of powder cocaine, 8.4 grams of cocaine base, 187.9 grams of marijuana, surveillance equipment, and a measuring cup that contained cocaine residue. Smith's fingerprints were found on the cup. The execution of the 2006 warrant yielded 16.7 grams of cocaine base, 417.8 grams of marijuana, large sums of money, several firearms, and miscellaneous ammunition. Based on this evidence, Smith was indicted for one count of conspiracy to possess with intent to distribute cocaine and cocaine base, and seven counts of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). Before trial, Smith filed a motion to suppress the fruits of the 2005 and 2006 searches on the basis that the affidavits supporting the warrants contained factual misrepresentations. Smith also requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). The district court denied Smith's motion to suppress as well as his request for a *Franks* hearing.

At the end of the fourth day of trial, Juror No. 1 asked to be excused. The district court excused him after conducting a meeting with him and counsel in chambers with no court reporter present. It then "memorialized" for the record what had happened during that closed meeting, stating that Juror No. 1 felt that he knew too

much about the situation and could no longer be fair and impartial. Defense counsel also noted that Juror No. 1 had said to another jury member that "this testimony is hitting close to home or something to that effect," and defense counsel expressed concern that this comment may have tainted the jury. The district court did not perceive any negative impact, but it conducted a second off-the-record meeting with Juror No. 1 to ask him whether he remembered the identity of the juror to whom he had made the remark. He could remember only that the juror was a male from Red Bud. While there were six other males sitting on the jury, none was from Red Bud, and so this information was of no help in identifying the other juror. The district court took no further action and proceeded with the case.

The jury convicted Smith of all eight counts, and he was sentenced to life terms for three counts and 360 months' imprisonment for the remaining five counts, all to run concurrently.

## II

Smith argues that the district court erred by denying him a *Franks* hearing. We review this decision for clear error. *United States v. Harris*, 464 F.3d 733, 737 (7th Cir. 2006). In order to obtain a *Franks* hearing, a defendant "must make a 'substantial preliminary showing' that: (1) the affidavit contained a material false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of

probable cause." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001). The district court denied a *Franks* hearing on the basis of the second and third requirements, finding no intentionality or recklessness and concluding that the false statements were not necessary to support probable cause.

For the 2005 affidavit, Smith argues that the police demonstrated reckless disregard for the truth in making an erroneous factual claim about the residence that was the subject of the search. Because this argument required it to assess Dunn's state of mind, the district court was permitted to "infer reckless disregard from circumstances evincing 'obvious reasons to doubt the veracity' of the allegations," *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001). It was not required to draw such an inference, however, and it declined to do so based on the record before it. Smith did not put forward any other evidence. We see no reason to find that the district court clearly erred in finding that Smith was not entitled to the hearing he sought.

Although he has not articulated it explicitly, Smith is apparently arguing also that Dunn was acting with reckless disregard for the truth with respect to the 2006 affidavit, which mentioned three buys instead of two. The district court was faced essentially with a credibility issue to resolve: was Dunn reckless, or had he made a simple scrivener's error? The court chose the latter interpretation. *Cf. United States v. McClellan*, 165 F.3d 535, 545 (7th Cir. 1999) (no *Franks* hearing required for a simple transposition of numbers in an address). We find no clear error here either.

Even without the misstatements or, as Smith would have it, falsehoods, the information in the affidavits was enough to establish probable cause. When the 2005 affidavit is stripped of its inaccurate information, there is still Fletcher's trip to the pink house to retrieve cocaine and Green's purchase of cocaine in the front yard. The 2006 affidavit relied on further controlled buys in 2006 in addition to the ones noted in the 2005 affidavit. In both cases, there is clearly sufficient information to establish probable cause with respect to the pink house. Smith was not entitled to a *Franks* hearing, because there was nothing in this record that compelled the district court to give him one.

### III

Smith further argues that the district court erred in its handling of Juror No. 1's misconduct in discussing the case with another juror. This court reviews a trial court's handling of jury misconduct for abuse of discretion. *United States v. McClinton*, 135 F.3d 1178, 1186 (7th Cir. 1998). Any error that is found is reviewed for harmless-ness. *United States v. Olano*, 507 U.S. 725, 734 (1993).

The district court ruled that Juror No. 1's statement that the testimony was "hitting close to home" was innocuous. As a result, it decided not to pursue more in-depth questioning of the jury. Smith contends that the district court should not have conducted a meeting off the record and that it should have done more to investigate and remedy the prejudicial effect of Juror No. 1's statement.

Holding off-the-record meetings and later memorializing them on the record is not a recommended practice, as it "greatly handicaps this court in passing on the question of the district court's possible abuse of discretion." *United States v. Palomares*, 119 F.3d 556, 558 (7th Cir. 1997). It is difficult, however, to see the statement "hitting close to home" as anything but innocuous, and Smith has failed to demonstrate how Juror No. 1's self-diagnosed lack of impartiality (which he dutifully brought to the attention of the court) could be transmitted through such a neutral statement. In addition, the district court may have had good reason not to investigate further, as "quizzing a juror, or perhaps all the jurors, in the middle of a trial is likely to unsettle the jury." *United States v. Stafford*, 136 F.3d 1109, 1113 (7th Cir. 1998).

Thus, we find no abuse of discretion in the district court's handling of Juror No. 1's statement. In any event, the error, were there one, would be harmless. The evidence yielded in the two searches is extensive and quite damning of Smith, and the government had other evidence as well, including testimony from various co-conspirators. Therefore, we hold that Smith is not entitled to a new trial.

*   *   *

The judgment of the district court is AFFIRMED.