In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1038

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SHARIFF MILLER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CR 629—**Virginia M. Kendall**, *Judge.*

ARGUED OCTOBER 25, 2011—DECIDED MARCH 12, 2012

Before EASTERBROOK, *Chief Judge*, HAMILTON,
*Circuit Judge*, and MYERSCOUGH, *District Judge*.[*]

HAMILTON, *Circuit Judge.* In April 2008, acting on a tip
from a confidential informant, police obtained a search
warrant and then raided a home where defendant
Shariff Miller and several other people were staying.

[*] The Honorable Sue E. Myerscough of the Central District of
Illinois, sitting by designation.

After apprehending Miller on his way out the side door, police searched the house and found several guns and a quantity of crack cocaine. The cocaine and a pistol were found close to some of Miller's personal effects in a room where he was alleged to be staying. Miller was tried and convicted of three offenses: possessing more than five grams of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), possession of a firearm in furtherance of a drug crime in violation of 18 U.S.C. § 924(c)(1)(A), and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He was sentenced to a total of twenty years in prison.

Miller appeals his convictions and raises three issues. First, he asserts that the search warrant was issued without probable cause because it was based on only uncorroborated, bare-bones information from an informant of unknown reliability. We pass over the issue of probable cause itself and conclude that the district court did not err by denying Miller's motion to suppress. The officers could rely in good faith on the judge's issuance of the search warrant. Second, Miller objects to the introduction at trial of evidence of his possession, two months earlier, of the same pistol the police found in the search. The district court did not abuse its discretion under Federal Rule of Evidence 404(b) by admitting this evidence of Miller's recent prior possession of the same pistol he was charged with possessing.

The third issue, however, requires reversal of two of Miller's convictions and a remand for re-sentencing on the third. At trial, the prosecution used Rule 404(b) to

admit evidence that Miller had been convicted in 2000 of felony possession of cocaine with intent to distribute it. We conclude that admission of the details of Miller's prior drug conviction violated the character evidence prohibition of Rule 404(b) and was an abuse of discretion. In light of Miller's defense, details about his prior conviction could have served only to suggest to the jury that Miller possessed drugs with intent to distribute in 2008 because he had possessed drugs with intent to distribute in 2000. Use of a prior drug distribution conviction to prove intent to distribute is often a disguised use for impermissible propensity purposes, and was so here. We have often warned about the dangers of applying the exceptions in Federal Rule of Evidence 404(b) too loosely to admit prior bad acts, especially in drug cases, without paying close attention to both the legitimacy of the purpose for which the evidence is to be used and the need for it. See, *e.g.*, *United States v. Beasley*, 809 F.2d 1273, 1277-80 (7th Cir. 1987). Those admonitions bear repeating here, as we explain in the third part of this opinion. We reverse Miller's conviction on the charge of possessing crack cocaine with intent to distribute and on the related charge of possessing a firearm in furtherance of a drug trafficking crime. Miller's conviction for being a felon in possession of firearms is affirmed because it was supported by separate evidence and was not tainted by the impermissible propensity evidence. We remand for a new trial on the drug-related charges and for re-sentencing on the felon-in-possession charge.

I. *The Search Warrant*

Miller first argues that the warrant to search him and the house was not supported by probable cause, so that none of the evidence later used against him was lawfully obtained. When a judge receives an application for a search warrant, the judge's task is to make a practical, common-sense decision about whether the evidence in the record shows a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Curry*, 538 F.3d 718, 729 (7th Cir. 2008); see generally *Illinois v. Gates*, 462 U.S. 213, 240-41 (1983). A court reviewing an initial finding of probable cause to support the search warrant does not decide the question of probable cause *de novo* but gives "great deference" to the issuing judge's determination so long as the judge had a "substantial basis" for the finding. *Gates*, 462 U.S. at 236; accord, *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008). We do not defer to the district court's application of the same standard of review to the issuance of the warrant. *McIntire*, 516 F.3d at 578.

Without deciding whether that "great deference" is enough to save the finding of probable cause here, we hold that the district court properly denied Miller's motion to suppress because the officers executed the warrant in good-faith reliance on its issuance by the state court. See *United States v. Peck*, 317 F.3d 754, 757-58 (7th Cir. 2003), citing *United States v. Leon*, 468 U.S. 897, 923 (1984). We review *de novo* a district court's finding that the good-faith exception of *Leon* applies to a particular

warrant. *E.g., United States v. Bell*, 585 F.3d 1045, 1052 (7th Cir. 2009).

In *Leon*, the Supreme Court held that even if a search warrant was invalid because the supporting affidavit failed to support a finding of probable cause, evidence seized in executing the warrant should not be suppressed if the police officers relied in good faith on the judge's decision to issue the warrant. 468 U.S. at 922-23. A police officer's decision to obtain a warrant is treated as prima facie evidence that the officer was acting in good faith. *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008). A defendant can defeat the good-faith exception to the exclusionary rule by showing (1) that the issuing judge abandoned the detached and neutral judicial role; (2) that the officer was dishonest or reckless in preparing the affidavit; or (3) that the warrant was so lacking in probable cause that the officer could not reasonably rely on the judge's issuance of it. *Id.*; see also *Leon*, 468 U.S. at 923. There is no indication here that the issuing judge merely rubber-stamped the affidavit or that the officer preparing the affidavit was dishonest or reckless. The question of good faith here turns on whether the warrant was so facially deficient that an officer could not reasonably rely on it.

In applying *Leon* here, it is useful to compare the affidavit supporting this warrant to the affidavits in dispute in *Garcia* and *Peck*, which were based on similar information from confidential informants. In *Peck*, the informant said that she had been in the defendant's apartment in the past two days and had seen "large

amounts" of substances wrapped for sale, and that the defendant had told her the packages contained crack cocaine and marijuana he planned to sell. The informant told the police that she wanted to punish the defendant because he was not paying for diapers for their child and because he was dealing drugs. 317 F.3d at 755. The affidavit provided no details about where the drugs were hidden, quantities, how often the defendant sold drugs, or even the defendant's appearance. Nor did it explain how the informant knew the substances were drugs or why she should be deemed reliable, and the police did virtually nothing to corroborate her information. *Id*. at 756-57. Like the informant in Miller's case, the informant in *Peck* also appeared before the issuing judge to swear that the affidavit was true but did not provide any additional testimony. We found in *Peck* that the affidavit failed to establish probable cause for the search warrant.

In *Garcia*, an informant told police that he had been inside the defendant's apartment in the last 72 hours and had seen a substance he believed was cocaine in a plastic bag in the living room. The affidavit explained that the informant recognized cocaine because he had sold it in the past, and the informant had provided reliable information to police in the past. 528 F.3d at 486. The affidavit lacked many other details that might be expected, and it used a printed form that included mistakes and omitted other information. We concluded "with some reservation" that the affidavit was sufficient, given the great deference shown to the issuing judge's decision. *Id*.

The affidavit supporting the search of Miller's house here said that the informant (1) had been in the residence within the 72 hours; (2) had seen four "larger plastic bags containing several smaller plastic baggies each with an amount of a white rock-like substance"; (3) knew that the substance seen was consistent with the "look, packaging and texture of Cocaine"; (4) had seen cocaine over a hundred times before; and (5) had seen cocaine in the same residence on a few occasions over the last month. Although the affidavit identified and generally described Miller, it left some ambiguity about whether that identification was made by the informant or through other means. There was no indication that the informant had ever given reliable information to assist a police investigation before, nor did the police try to corroborate any details before seeking a warrant.

Regardless of whether one views the affidavit in this case as closer to the barely sufficient affidavit in *Garcia* or to the insufficient one in *Peck*, the salient point here is that in both cases, we held that the officers were entitled to rely in good faith on the judge's decision to issue a search warrant. Miller tries to distinguish *Peck* by arguing that the informant's personal relationship to the defendant in that case added to the reliability of her information. We are not persuaded. One could say just as easily that the *Peck* informant's personal relation- ship and her admitted desire to have the defendant "punished" weighed against her credibility. Returning to Miller's case, the officers here sought the warrant from a neutral, detached judge, creating a presumption of good faith. The affidavit included enough detail that a

reasonable officer might rely on the judge's issuance of a warrant based on it. Although the details were generic, they also were recent, were based on firsthand observation, and were likely against the informant's penal interest. The district court did not err in denying Miller's motion to suppress.

II.  *Evidence of Prior Possession of the Pistol*

Police found three guns while searching the house. One semi-automatic pistol was found, cocked and loaded, under the mattress in the bedroom where the crack cocaine was found and where Miller was alleged to be staying. Two rifles were located in a closet in another room. The government charged Miller with possessing all three guns "on or about April 21, 2008," the day of the search and his arrest. The jury ultimately convicted Miller of possessing the pistol and one of the rifles as a felon, and of possessing the pistol in furtherance of drug trafficking. At the trial, a witness testified that she had seen Miller take the same pistol out of his pants and place it on a table in February, some two months before his arrest. The witness had seen another person with the same gun (identified each time by its "dark, rusty grey color") in March.

Miller argued at trial and on appeal that this testimony was inadmissible under Federal Rule of Evidence 404(b), which prohibits the use of prior bad acts to suggest a propensity to have committed such an act on a particular occasion. According to Miller, the government used the testimony that he unlawfully possessed

a gun in February to suggest to the jury that he is the sort of person who unlawfully possesses guns, and so likely possessed a gun in April when charged. The government counters, and we agree, that the testimony was in fact circumstantial evidence of the charged crime. It concerned the same gun, and the prior observed possession was relatively recent. See, *e.g.*, *United States v. Lloyd*, 71 F.3d 1256, 1267 (7th Cir. 1995). In the language of Rule 404(b), the government used the evidence for "another purpose" permitted by the rule. Miller's prior possession and display of the rusty grey pistol suggest that he owned or at least had the ability to exercise control over that rusty grey pistol.

The district court concluded that Miller's prior possession of the pistol was "inextricably intertwined" with the charged crime. Shortly after Miller's trial, we stated in *United States v. Gorman*, 613 F.3d 711, 718-19 (7th Cir. 2010), that "the inextricable intertwinement doctrine has outlived its usefulness," and we instructed district courts to stop using it. "If evidence is not direct evidence of the crime itself, it is usually propensity evidence simply disguised as inextricable intertwinement evidence, and is therefore improper, at least if not admitted under the constraints of 404(b)." *Id.* In this case, however, the evidence of Miller's recent possession of the same gun was directly relevant evidence of the charged crime, not propensity evidence. Because the district court reached the correct result, the court's use of the now disfavored rationale does not matter. See, *e.g.*, *United States v. Foster*, 652 F.3d 776, 784-86 (7th Cir. 2011) (evidence that district court admitted as "inex-

tricably intertwined" before *Gorman* was still properly admissible).

Evidence of prior, uncharged gun possessions by felons has the potential to be used for impermissible propensity purposes. We have analyzed such evidence under Rule 404(b) and have allowed it, at least where the prior possession was recent and involved the same gun. *E.g., United States v. Canady*, 578 F.3d 665, 671-72 (7th Cir. 2009) (prior use of the same gun admitted to show possession); cf. *United States v. Cassell*, 292 F.3d 788, 792-94 (D.C. Cir. 2002) (prior possessions of a 9-mm handgun admissible to show knowledge and possession of a 9-mm handgun). If the prior possession was of a different gun, then its value as direct or circumstantial evidence of the charged possession drops and the likelihood that it is being used to show propensity to possess guns rises considerably. Similarly, as the prior possession is further removed in time, it becomes less probative of possession on the date charged. Courts are familiar with this evidentiary balancing. Determinations under Rule 404(b) require such an analysis, as when applying Rule 403. See Fed. R. Evid. 404 advisory committee's notes (1972). Here, the witness testified that Miller possessed a particular gun two months before the date he was charged with being in possession of the same gun — found under his mattress. This testimony was admissible as circumstantial evidence of the charged crime, and its use for that purpose was not barred by Rule 404(b).

III. *Evidence of Prior Intent to Distribute Cocaine*

The government's use of Miller's eight-year-old conviction for possession of cocaine with intent to distribute was far more problematic, and the admission of that evidence here requires reversal of his conviction on the two drug-related charges. Miller was caught in 2000 with crack cocaine and pled guilty to felony possession with intent to distribute. At that time, the cocaine was also packaged in small plastic bags inside larger plastic bags — though Miller was of course not unusual in packaging drugs for sale in this way. When officers searched the house on April 21, 2008, they found crack cocaine packaged in plastic bags on the bed in Miller's alleged room. They also found a scale and similarly packaged cocaine in shoe boxes that also contained some of Miller's personal papers. Miller has never argued that the bags of drugs — some of which had price tags attached — were not intended for distribution. His defense at trial was instead that, despite the proximity to his personal effects, the drugs were not in fact his and he was not staying in the room where the drugs and pistol were found.

Because felon status is an element of the felon-in-possession charge, the government needed to prove that Miller was a convicted felon. The fact of his prior conviction of an *unspecified* felony was admissible for that purpose. *E.g., Old Chief v. United States*, 519 U.S. 172, 190-92 (1997). The nature and underlying story of that prior conviction, however, were not necessary or admissible merely to prove felon status — although they might

have been admissible for another purpose under Rule 404(b). *Id.* The jury would learn that Miller was a convicted felon, but the government also wanted to use the details of the prior conviction for possessing cocaine with intent to distribute. The district court wisely waited until after opening statements and cross-examination of a key witness to learn the defense theory before deciding whether to admit the details under Rule 404(b). In making the later determination, however, the court abused its discretion in allowing the prosecution to present the bad acts evidence to the jury. (After the court admitted evidence of the details of the prior arrest, Miller testified about them in his own defense, and the government then cross-examined him with the actual conviction for the earlier drug crime.)

Miller contends, and we agree, that the drug crime evidence from 2000 was substantially more prejudicial than it was probative. The only purpose for which it could have been used by the jury here was to draw an impermissible propensity inference. The arguments presented in this case suggest that admission of prior drug crimes to prove intent to commit present drug crimes has become too routine. Closer attention needs to be paid to the reasons for using prior drug convictions — to lessen the danger that defendants like Miller will be convicted because the prosecution invited, and the jury likely made, an improper assumption about propensity to commit drug crimes.

Rule 404(b) does not provide a rule of automatic admission whenever bad acts evidence can be plausibly linked

to "another purpose," such as knowledge or intent, listed in the rule. The Rule 402 requirement of relevance and the unfair prejudice balancing inquiries of Rule 403 still apply with full force. *United States v. Beasley*, 809 F.2d 1273, 1279-80 (7th Cir. 1987); *United States v. Jones*, 455 F.3d 800, 810 (7th Cir. 2006) (Easterbrook, J., concurring); *United States v. Seals*, 419 F.3d 600, 610-12 (7th Cir. 2005) (Posner, J., concurring); *United States v. Chavis*, 429 F.3d 662, 672-73 (7th Cir. 2005) (Cudahy, J., concurring). This must be so because the "list of exceptions in Rule 404(b), if applied mechanically, would overwhelm the central principle. Almost *any* bad act evidence simultaneously condemns by besmirching character and by showing one or more of 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident', not to mention the 'other purposes' of which this list is meant to be illustrative." *Beasley*, 809 F.2d at 1279 (emphasis in original). Rule 404(b) requires a case-by-case determination, not a categorical one. The trial judge must balance the relevance of the proposed use of the evidence to the case — and the evidence's relevance to that proof — against the high risk that the evidence will also tend to establish bad character and propensity to commit the charged crime. When, as was true here, intent is not meaningfully disputed by the defense, and the bad acts evidence is relevant to intent only because it implies a pattern or propensity to so intend, the trial court abuses its discretion by admitting it.

The parties debate whether intent is always at issue, and whether the answer to that question depends on the "general intent" or "specific intent" nature of the

crimes charged. We explained in *United States v. Hicks*, 635 F.3d 1063, 1071 (7th Cir. 2011), citing *United States v. Manganellis*, 864 F.2d 528, 532-33 (7th Cir. 1988), that if a mere claim of innocence were enough to automatically put intent at issue, the resulting exception would swallow the general rule against admission of prior bad acts. The government attempts to distinguish *Hicks* as addressing only general intent crimes like actual drug distribution, not specific intent crimes like possession with intent to distribute. But the point in *Hicks* applies broadly. It is true that the government has a higher burden to prove the specific intent crime of possession with intent to distribute. The government cites *United States v. Monzon*, 869 F.2d 338, 344 (7th Cir. 1989), in which we stated that "intent is automatically in issue" in specific intent crimes. But *Monzon* also clarified that identifying a Rule 404(b) exception, such as intent, that is "at issue" is only the first step of the analysis. Identification of an at-issue, non-propensity Rule 404(b) exception is a necessary condition for admitting the evidence, but not a sufficient condition. Whether the intent element is specific or general for the charged crimes, all bad acts evidence must be balanced for probative value and unfair prejudice. *Id.*; *Jones*, 455 F.3d at 806-07.

It is helpful to distinguish between two aspects of the relevance inquiry. The first aspect concerns whether a Rule 404(b) exception, like intent, is "at issue" — that is, whether the issue is relevant to the case. For example, knowledge may not be at issue at all where the charge is a strict liability offense, so that knowledge is not even an element of the crime. Similarly, while intent is at

least formally relevant to all specific intent crimes, intent becomes more relevant, and evidence tending to prove intent becomes more probative, when the defense actually works to deny intent, joining the issue by contesting it. When, as in this case, the drugs in question were clearly a distribution quantity, the packages had price tags, and the defendant did not deny they were intended for distribution by someone, intent was "at issue" in only the most attenuated sense.

The second aspect of relevance is not concerned with whether the government must prove intent or how difficult that proof might be. This second inquiry assumes intent is relevant to the case and asks whether the bad acts evidence offered is relevant to and probative of intent, without being too unfairly prejudicial by invoking a propensity inference. In other words, can the government fairly use *this* evidence to meet its burden of proof on this issue? Intent can be "automatically at issue" because it is an element of a specific intent crime, but the prior bad acts evidence offered to prove intent can still be completely irrelevant to that issue, or relevant only in an impermissible way. Here, even though the purpose of proving "intent" was invoked, the bad acts evidence was not probative of intent except through an improper propensity inference.

The government has no answer here for the teaching of *Beasley*, requiring that the district court must in every case make a "principled exercise of discretion" to determine (a) whether the evidence is actually probative of

intent, and (b) whether its probative value on that question is worth the risk of unfair prejudice. 809 F.2d at 1079 ("The district judge must both identify the exception that applies to the evidence in question and evaluate whether the evidence, although relevant and within the exception, is sufficiently probative to make tolerable the risk that jurors will act on the basis of emotion or an inference via the blackening of the defendant's character."). By focusing on whether intent was at issue in this case, the government overlooked more pertinent substantive questions about the degree of relevance and the prejudicial effect of the particular evidence.

The government argues that Miller's prior conviction is relevant to prove intent here, but has not satisfactorily explained why this is true. Miller's defense, that the drugs were not his, has nothing to do with whether he intended to distribute them. He did not argue that he intended to consume rather than sell the drugs, or that he lacked knowledge of cocaine or how to sell it. Either argument would have better joined a genuine issue of intent or knowledge. Rather, the only conceivable link between the defense and intent here would also be true of almost any defense Miller might raise; by pleading not guilty, Miller necessarily contradicted the government's belief that he intended to distribute the drugs. But as we said in *Hicks*, if merely denying guilt opens the door wide to prior convictions for the same crime, nothing is left of the Rule 404(b) prohibition.

We recognize that many of our cases approve the admission of prior drug-dealing crimes to show intent

in drug-dealing prosecutions, despite the fact that, of the Rule 404(b) other purpose exceptions, intent is the exception most likely to blend with improper propensity uses. *E.g.*, *United States v. Perkins*, 548 F.3d 510, 514-15 (7th Cir. 2008) (admitting three prior convictions for possession or delivery of small amounts of cocaine to show knowledge and intent with regard to small amounts of cocaine); *United States v. Hearn*, 534 F.3d 706, 712-13 (7th Cir. 2008) (admitting prior drug conviction to rebut defendant's assertion that the quantity of drugs was too small to indicate intent to distribute); *United States v. Hurn*, 496 F.3d 784, 787-88 (7th Cir. 2007) (admitting prior drug conviction to rebut an innocent bystander defense); *United States v. Best*, 250 F.3d 1084, 1091-93 (7th Cir. 2001) (admitting prior conviction for possession in a rented house to show intent, knowledge, and absence of mistake with regard to a crack house). But in each of these cases, after discussing relevance of the evidence to intent, the court balanced the asserted probative value of the evidence against its potential for unfair prejudice. We have never approved admission of bad acts evidence solely because it was formally relevant to intent and intent was "at issue."

There may be enough cases affirming such admissions, however, that in cases charging specific-intent drug crimes, the admission of prior drug convictions may have come to seem almost automatic. It is not. We need to recall first principles. "To meet the test of Rule 404(b), there must be a showing that an issue has been joined as to intent, or another of the 404(b) categories, discrete from a showing of mere propensity." *Chavis*, 429 F.3d at 673

(Cudahy, J., concurring). To differentiate between "the illegitimate use of a prior conviction to show propensity and the proper use of a prior conviction to prove intent," "the government must affirmatively show why a particular prior conviction tends to show the more forward-looking fact of purpose, design, or volition to commit the new crime." *United States v. Jones*, 389 F.3d 753, 757-58 (7th Cir. 2004). In every Rule 404(b) case relying on intent, the court (1) must consider the probative value of the prior act to prove present intent, and (2) must weigh that value against the tendency of the evidence to suggest unfairly a propensity to commit similar bad acts. The availability of precedent that balances the relevance of bad acts evidence and decides to admit it does not excuse prosecutors or courts from asking in each new case whether and how prior bad acts evidence might be relevant, probative, and fair.

Confusion and misuse of Rule 404(b) can be avoided by asking the prosecution exactly how the proffered evidence should work in the mind of a juror to establish the fact the government claims to be trying to prove. Here, Miller claimed that the drugs found in the shoe box and on the bed were not his, that he was in effect an innocent bystander. Witnesses told the jury about Miller's arrest and conviction for dealing drugs in 2000. The government defends use of that evidence on the ground that it showed his intent to distribute drugs in 2008. How, exactly, does Miller's prior drug dealing conviction in 2000 suggest that he intended to deal drugs in 2008? When the question is framed this way, the answer becomes obvious, even though implicit:

"He intended to do it before, ladies and gentlemen, so he must have intended to do it again." That is precisely the forbidden propensity inference.

And this is where the district court erred, even as it undertook the correct Rule 402 relevance and Rule 403 prejudice analysis — and cited some of our cases mentioned above. The court focused on whether intent was at issue based on Miller's defense and on the government's obligations of proof. Having concluded that intent was at issue, the court turned to analyze prejudice and, citing *Hurn*, simply stated that the evidence was highly probative of intent. Had the court asked more specifically how the prior conviction tended to show intent eight years later, it would have recognized that it was dealing with propensity evidence all the way down. Unless there is a persuasive and specific answer to the question, "How does this evidence prove intent?" then the real answer is almost certainly that the evidence is probative only of propensity.

Later, in addressing Miller's post-trial motions, the district court also suggested that the prior conviction was probative of intent because of the identical packaging of the drugs at issue. Miller's prior conviction cannot be admissible merely because it was for the same crime or because it also involved drugs in small plastic bags. Pattern evidence *is* propensity evidence, and it is inadmissible unless the pattern shows some meaningful specificity or other feature that suggests identity or some other fact at issue. *Beasley*, 809 F.2d at 1278 ("Unless something more than a pattern and

temporal proximity is required, the fundamental rule is gone. This is why 'pattern' is not listed in Rule 404(b) as an exception."). Crack cocaine in small plastic bags is far too generic in drug cases to make a pattern of two acts over eight years probative of anything beyond propensity. See *United States v. Smith*, 103 F.3d 600, 603 (7th Cir. 1996) (*modus operandi* evidence must be "idiosyncratic" and must bear "a singular strong resemblance to the pattern of the offense charged"). Such facts are no more probative for a legitimate evidentiary purpose than evidence that money was stolen (or that bags were used to carry it) would be in attempting to link two bank robberies.

Miller's prior conviction for possession of cocaine with intent to distribute shows he once had an intent to distribute drugs. When intent is an essential element of the charged crime, prior bad acts evidence directed to intent can easily be nothing more than propensity evidence. This is why cases so often look to the nature of the defense to seek a possible justification for use of the evidence. In 2008, Miller's defense was that someone else possessed the drugs and intended to distribute them. The only logical rebuttal that could be based on the prior conviction is that Miller was the one who had intended to distribute before. The relevance of the prior conviction here boils down to the prohibited "once a drug dealer, always a drug dealer" argument. See *Hicks*, 635 F.3d at 1073 ("In our view, the only apparent relevance of the prior convictions was the very inference that Rule 404(b) prohibits — that is, that Hicks had sold drugs in the past and probably did so this time as

well."). A prosecutor who wants to use prior bad acts evidence must come to court prepared with a specific reason, other than propensity, why the evidence will be probative of a disputed issue that is permissible under Rule 404(b). Mere recitation that a permissible Rule 404(b) purpose is "at issue" does not suffice.

For these reasons, we conclude that the admission of the details of Miller's 2000 conviction was an abuse of the district court's discretion. The government argues in the alternative that the error was harmless. We disagree as to the two drug-related charges, though the evidence of Miller's guilt in this case was strong. Police found a scale suitable for measuring drugs, and crack cocaine packaged for distribution, both in shoe boxes containing Miller's personal papers. Miller initially tried to flee the scene and later wrote a letter to a witness asking her to lie (assuming that the government's theory of the evidence was correct) about where he was staying in the house. Miller presented a vigorous defense, and the government attacked the credibility of his defense witnesses. That does not mean the error here was harmless.

In deciding whether the non-constitutional error was harmless, we do not try to guess what the jury might have decided if it had not known that Miller had been convicted of this same crime eight years earlier. We instead ask whether an average juror would find the prosecution's case significantly less persuasive without the improper evidence. See *Hicks*, 635 F.3d at 1073-74 ("Although the evidence may have been sufficient to convict Hicks, we conclude that an average juror would

have found the government's case significantly less persuasive without the prior convictions."); *United States v. Jenkins*, 593 F.3d 480, 486 (6th Cir. 2010) (admission of prior conviction not harmless, despite "ample evidence to convict," because of disputed issue of possession at trial); see generally *Kotteakos v. United States*, 328 U.S. 750, 765 (1946) ("But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.").

We do not agree with the government that its evidence was overwhelming. Nor do we agree that the strength of the other evidence is the sole relevant factor. Our role in deciding whether an error was harmless is not to "become in effect a second jury to determine whether the defendant is guilty." See *Neder v. United States*, 527 U.S. 1, 19 (1999). The Supreme Court explained our role in *Kotteakos*:

> And the question is, not were they right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting.
>
> This must take account of what the error meant to them, not singled out and standing alone, but in relation to all else that happened. And one must judge others' reactions not by his own, but with

allowance for how others might react and not be regarded generally as acting without reason. This is the important difference, but one easy to ignore when the sense of guilt comes strongly from the record.

328 U.S. at 764 (citations omitted). In a case of non-constitutional error like this, the question is whether we can say "with fair assurance" that the verdict was not substantially swayed by the error. *Id.* at 765.

This analysis calls for consideration of additional factors beyond the strength of the other evidence, such as how prejudicial the bad acts evidence was, how it was used by the government at trial, and if there are any such indications from the verdict, how the jury likely received and considered the impermissible evidence. We cannot say with fair assurance that the evidence of the particulars of Miller's prior drug conviction did not contribute to the jury's verdict.

Apart from the Rule 404(b) evidence, the government's case was certainly strong. But the Rule 404(b) evidence can be "very prejudicial." Fed. R. Evid. 404 advisory committee's notes (1972). By piling Miller's prior drug conviction on top of what was otherwise a strong case, the government distracted the inquiry from what happened in April 2008 and invited the jury to decide guilt for the wrong reasons. Miller put on a vigorous defense. The government attacked the credibility of the defense witnesses and the defense theory. If we were sitting as jurors, we might well have voted to convict in the absence of the Rule 404(b) evidence, but as the Court explained in *Kotteakos*, that is not the question.

We do not act as a second jury. We must try to evaluate the case from the perspective of the jurors, based on their likely reactions, and not our own. Doubts — a lack of "fair assurance" — call for a new trial. In this case, the prejudicial power of the Rule 404(b) evidence, the prominent play it received in the government's case, and its effects on the defense strategy combine to require a new trial. The error was not harmless.

The danger that the jury would unfairly rely on Miller's prior drug dealing to suggest his current guilt was not cured in this case by the court's limiting instruction to the jury: "You may consider this evidence only on the questions of knowledge, intent and in deciding whether the defendant's testimony is truthful in whole, in part, or not at all." A considerable literature argues for and against, and attempts to measure empirically, the effectiveness of this sort of pattern jury instruction. Some have suggested that such instructions are incoherent even to bright laypeople. We leave the broader questions for another day. For this case, it is enough to note that when the government cannot explain how the prior conviction relates to the question of intent without resorting to a propensity inference, it would be unfair to expect the jury to do so based only on this instruction.[1]

_____

[1] Rather than leaving juries to decode for themselves how they may properly consider admissible bad acts evidence "on the questions of knowledge and intent," we encourage district judges to add to the pattern instruction a case-specific

(continued...)

This reasoning requires us to reverse Miller's convictions for possession of cocaine with intent to distribute and the closely related possession of a firearm in furtherance of a drug trafficking crime. Miller's conviction for being a felon in possession of a firearm, however, stands on sufficiently independent evidence that we are satisfied, with "fair assurance," that the government's case on that charge was not substantially affected by the improper Rule 404(b) evidence. There was undisputed evidence that Miller's fingerprint was on one of the rifles, and he admitted handling it. Propensity evidence may be harmless with regard to unrelated

---

[1] (...continued)

explanation of the permissible inference — with the requisite care not to affirmatively credit that inference. For example, suppose Miller had actually disputed intent to distribute and suggested the drugs were for his personal use. The pattern instruction could be adapted to be specific: "The defense has argued that the defendant intended to use the drugs personally rather than distribute them. You have heard evidence that the defendant was convicted in 2000 of possessing cocaine with intent to distribute it. You may consider the evidence concerning the circumstances of that conviction, along with all other relevant evidence, in deciding whether the government has proven beyond a reasonable doubt that the defendant intended to distribute the drugs as charged in the indictment, and to evaluate the defendant's credibility. You may not consider the evidence of the earlier conviction for any other purposes." If a suitable explanation cannot be drafted without invoking a propensity inference, the evidence may not in fact be admissible.

counts while requiring reversal of others. See, *e.g.*, *Beasley*, 809 F.2d at 1280. The Rule 404(b) error was harmless with respect to the felon-in-possession charge.

IV. *Conclusion*

Miller's convictions for possession with intent to distribute and for possession of a firearm in furtherance of that crime are REVERSED. Miller's conviction for being a felon in possession of a firearm was not tainted by the Rule 404(b) error and is AFFIRMED, but the sentence on that charge is VACATED so that the district court can re-sentence Miller on that charge once the other charges are resolved. The case is REMANDED for new sentencing on the felon-in-possession charge and a new trial on the other charges consistent with this opinion. Circuit Rule 36 shall not apply on remand; the case shall be returned to Judge Kendall.