NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 13, 2012
Decided June 21, 2012

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 11-3105

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>JERMAINE ASKIA COOPER,<br>*Defendant-Appellant*. | United States District Court for the Northern District of Indiana, Fort Wayne Division<br><br>No. 1:09-CR-51-TLS<br><br>Theresa L. Springmann,<br>*Judge*. |

**O R D E R**

Jermaine Cooper was arrested after police executing a state search warrant found drugs and guns in his home. Federal authorities took over the investigation and charged Cooper with multiple crimes. The district court denied his pretrial motion to suppress the evidence from the search, and after a jury trial Cooper was convicted of possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), possession and distribution of crack cocaine, 21 U.S.C. § 841(a)(1), and obstruction of justice, 18 U.S.C. § 1512(c)(2). On appeal he challenges only the adverse ruling on his motion to suppress. Because the affidavit supporting the warrant establishes probable cause to search Cooper's residence, we affirm.

**I**

Police in Fort Wayne, Indiana, applied in May 2009 for a warrant to search Cooper's residence. The eight-page supporting affidavit prepared by Detective Marc Brown recounts the following facts: In June 2008 law enforcement received a Crime Stoppers tip that Cooper managed a bar, the Dove Shack, where cocaine was being sold. On April 15, 2009, the police arranged to have an informant buy some crack from Cooper at a gas station. Detectives fitted the informant with a transmitter, searched him and his vehicle before the transaction, and gave him $100 in recorded bills. Brown's affidavit states that surveillance officers observed a man, whom the informant later identified from a photo array as Cooper, give the informant a small bag containing suspected crack in exchange for $100. After the buy Brown searched the informant and his vehicle again but found no other contraband. The substance in the bag tested positive for cocaine. A separate team of officers, including Sergeant Jonathon Noll, followed Cooper back to the Dove Shack after the buy.

The affidavit went on to report that the informant made three more similar controlled buys, on April 20, April 27, and May 5. The methodology was the same each time. Brown searched the informant, fitted him with a transmitter, and gave him cash using recorded bills ($500 on April 20, $150 on April 27, and $160 on May 5). On April 20 and April 27, Cooper instructed the informant to meet him at Cooper's home. The first time, Brown hid in the back of the car as the informant drove to the residence, where the exchange took place. The May 5 deal took place at the Dove Shack. Each time, after the informant returned, he handed the suspected cocaine back to Brown. Brown then searched him to ensure that there was no other contraband – and on none of these occasions did he find any – and then tested the substance. On each occasion, the substance in the bag tested positive for cocaine. Detective Brown concluded his affidavit with a statement that the officers had maintained constant visual surveillance of the informant during all of the controlled buys. They had monitored his conversations and kept Cooper's home under constant visual surveillance when the informant was inside.

A state judge issued the warrant, and police searched Cooper's home. They recovered, in total, 355.7 grams of marijuana, 27.7 grams of powder cocaine, 42.1 grams of crack, scales, razors, bags, and $1,810 in currency. In addition, police located a handgun and ammunition on the first floor. Upstairs in the master bedroom police found another handgun and more ammunition. In a second bedroom, along with a crib, was a shotgun.

After he was indicted Cooper moved to suppress the evidence found in his home. He argued that Detective Brown's affidavit fails to establish probable cause. He pointed to a purported lack of information about the reliability of the informant—Brown does not say that the police had worked with the informant previously—and an alleged absence of any direct mention or description of him in the initial tip in 2008. Cooper also maintained that the affidavit omits significant information about each of the controlled buys. For the first, third,

and fourth buys, the affidavit does not say explicitly that, after the sale, the informant gave Brown the cocaine he purchased. For these three purchases the affidavit also uses the phrase "no items of contraband were located" to describe the result of searching the informant after the controlled transaction. Thus, Cooper argued, the affidavit does not establish that the informant bought cocaine from him on his first, third, or fourth tries. Moreover, Cooper contended, the second buy did not lead to information about Cooper because the affidavit does not say explicitly that the informant identified him as the seller, and it indicates that no surveillance officer was in the house to observe the informant receive the drugs from Cooper.

Without conducting an evidentiary hearing, the district court denied Cooper's motion. The court reasoned that the initial tip was substantially corroborated by the four controlled drug buys, which were described in sufficient detail. The court observed that it would defy common sense to interpret the statement that "no items of contraband were located" to mean that the informant had returned without drugs after meeting Cooper. Rather, the court concluded, Brown meant only that the substances tested by the police were the same ones that the informant had purchased from Cooper, not contraband from some other source. The court pointed out that Brown was referring to the drugs when he stated that he had observed the informant exchange money for a bag containing an off-white, rock-like substance and later described the field test of *the* off-white, rock-like substance.

At trial the government called the informant, Brown, and other local police officers and federal agents involved with the investigation. The government also introduced recordings made from the audio transmitted by the informant for three of the four transactions (because of a technical glitch, there was no recording of the second buy). Brown recounted the details of each purchase. For the first one, Brown explained, he relied on surveillance officers to tell him when the transaction was complete and afterward followed the informant back to the police station where the informant handed him the crack. Sergeant Noll testified that he could not identify the man that he followed back to the Dove Shack after the first buy. Brown told the jury about the second, third, and fourth buys and confirmed that after the third and fourth the informant had given him the drugs. (The affidavit is clear that the informant gave Brown the drugs after the second buy.) Brown also stated that he had paid the informant after each transaction.

The informant explained that he first approached the police with information about crack sales in Fort Wayne in April 2009. He confirmed that he had given the drugs to Detective Brown immediately after each buy. The government played the recordings of the first, third, and fourth buys, and the informant explained to the jury what they had heard. The informant admitted using drugs while working for the police, in violation of his agreement.

The jury returned guilty verdicts on the distribution counts corresponding to the first, third, and fourth buys; it also convicted on a possession count based on Cooper's constructive

possession of the drugs that were found during the search of his home and on charges of possession of a firearm by a felon and obstruction of justice. Cooper was acquitted on the distribution count corresponding to the second buy and on a charge of using a firearm during and in relation to the fourth buy. The district court sentenced him to a total of 265 months' imprisonment.

## II

After losing his pretrial suppression motion, Cooper did not make any additional objection on Fourth Amendment grounds when the evidence from his house was introduced at trial. Initially, Cooper took the position on appeal that he had therefore forfeited this point and could assert only plain error, but at oral argument he appeared to recede from that position. The latter view was correct. Because the district court's pretrial ruling on the suppression motion was definitive, Cooper did not need to object to the evidence at trial to preserve the Fourth Amendment issue for appellate review. See FED. R. EVID. 103(b); *United States v. Acox*, 595 F.3d 729, 733 (7th Cir. 2010); *Wilson v. Williams*, 182 F.3d 562, 565–67 (7th Cir. 1999) (*en banc*). In determining whether probable cause existed to support the search warrant, this court gives great deference to the conclusions of the judge who issued the warrant. *United States v. McIntire*, 516 F.3d 576, 577–78 (7th Cir. 2008); see *United States v. Miller*, 673 F.3d 688, 692–93 (7th Cir. 2012); *United States v. Prideaux-Wentz*, 543 F.3d 954, 958 (7th Cir. 2008).

After receiving an application for a search warrant, a judge must make "a practical, common-sense decision about whether the evidence in the record shows a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Miller*, 673 F.3d 688, 692 (7th Cir. 2012); see *United States v. McDuffy*, 636 F.3d 361, 363 (7th Cir. 2011). When an affidavit is the only evidence supporting the application, the validity of the warrant rests solely on the strength of the affidavit. *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009); *United States v. Orozco*, 576 F.3d 745, 748 (7th Cir. 2009).

Here, the affidavit describes four supervised crack purchases made by the informant from Cooper. When properly executed, a controlled buy provides a reliable indicator of illegal drug activity. *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006); see, *e.g.*, *United States v. Norris*, 640 F.3d 295, 300 (7th Cir. 2011); *United States v. Wilburn*, 581 F.3d 618, 624 (7th Cir. 2009); *United States v. Smith*, 576 F.3d 762, 765 (7th Cir. 2009); *United States v. Wiley*, 475 F.3d 908, 912 (7th Cir. 2007). The police watched the informant the entire time and listened to the four transactions (successfully recording three of them). Two of these buys took place at Cooper's home, the very location the officers sought to search. This provided ample basis for the state judge's finding of probable cause to issue the warrant.

Cooper argues that the absence of any information in the affidavit about the previous reliability of the informant cuts against the state judge's determination of probable cause. But

there is nothing talismanic about such information. Under the circumstances of this case, nothing turned on the informant's earlier track record. Investigators followed the informant and watched and listened while Cooper sold him drugs under controlled conditions. On these facts, the informant's reliability could be assessed on the spot. See *Wilburn*, 581 F.3d at 624 (where detective said nothing in affidavit about prior dealings with informant whose controlled buy provided basis to search defendant's apartment, appellate panel explained that "[w]e fail to see how knowing the past relationship between the detective and the CI would have shown that the detective omitted material information from his affidavit which would have caused the magistrate not to issue the warrant").

Additionally, Cooper contends that we should consider trial evidence that he says undercuts the informant's credibility and contradicts the affidavit. Though the government points to cases saying we should not rely on evidence first produced at trial to overturn a pretrial denial of a motion to suppress, see *United States v. Smith*, 80 F.3d 215, 220 (7th Cir. 1996); *United States v. Longmire,* 761 F.2d 411, 421 (7th Cir. 1985), more recent decisions might be read to allow us to consider all evidence when reviewing the denial of a motion to suppress. See *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005); *United States v. Yang*, 286 F.3d 940, 948 n.4 (7th Cir. 2002); *United States v. Trevino,* 60 F.3d 333, 336 (7th Cir. 1995). On the assumption that this is appropriate, Cooper asks us to consider the informant's trial testimony that he used and possessed controlled substances while working with law enforcement. But the jury learned about this fact and was able to use it in assessing the informant's credibility; that is all that was required. Cooper also points to a perceived inconsistency between Detective Brown's affidavit and Sergeant Noll's trial testimony. But there is none. The affidavit states that Noll followed Cooper to the Dove Shack after the first buy and watched him walk into the bar. At trial, Noll stated he could not identify the person that he was instructed to follow because he (Cooper) was wearing a coat and a stocking cap at the time. Noll's honest recollection does not, however, undermine either the details in the affidavit or the strong evidence produced at trial about Cooper's criminal activity.

We AFFIRM the judgment of the district court.