HAMILTON, Circuit Judge.
I respectfully dissent. The entire panel agrees that two of the three grounds the district court relied upon to admit the Rule 404(b) evidence are without merit. The remaining ground offered to support its admission was so weak that we can no longer say that admission was a sound exercise of discretion. The majority states the applicable law correctly in general terms, but under Rule 404(b), the nub of the matter lies in specific applications. I would reverse and remand for a new trial.[1]
Defendant Gomez was charged with participating in a five-month-long conspiracy to distribute several kilograms of cocaine, with deliveries of roughly 250 to 500 grams each. The deliveries went from Chicago to a Milwaukee residence that Gomez and several other people shared. The government’s evidence from telephone intercepts provided strong evidence against whoever was speaking on the telephone as “Güero.” The question is who was Güero? The government’s theory is that Gomez was Güero, while Gomez maintains that Güero was probably Victor Reyes — a man who also lived at the Milwaukee residence.
To help show that Gomez was the one involved in the conspiracy, the government *1160 offered the Rule 404(b) evidence: that just 14 grams of cocaine were in a clothes pocket in Gomez’s bedroom nearly four weeks after the end of the charged conspiracy. This evidence had virtually no genuine probative value and was unfairly prejudicial. Every theory for its admission either dissolves upon scrutiny or reduces to a pure propensity theory. The district judge was right the first two times when he ruled that the government had not yet shown grounds for admitting it, once before trial and once during trial.
The first time the government offered the evidence in trial, the district judge indicated that the defense had opened the proverbial door to the evidence by pointing out in cross-examination that the government had no evidence showing that Gomez was in possession of any cocaine during the charged conspiracy. That was the context of the judge’s comment that the defense had opened the door by implying that the defendant was “pure as the new fallen snow.” The majority gently calls the remark “infelicitous.” It clearly indicates an inclination toward propensity that is prohibited by Rule 404(b). Yet the district judge refused to admit the evidence at that time because the government had not yet offered sufficient evidence that the user quantity of cocaine in the pocket actually belonged to Gomez. The district court was not troubled at that point by the lack of a legitimate purpose. But the majority recognizes that it would have also been error to admit the evidence at this point for the lack of a legitimate Rule 404(b) reason to admit it, slip op. at 8, and on this point, I agree.
The government eventually cured this insufficient evidence problem (or at least the district judge did not clearly err by finding that the evidence of the later possession of the user quantity was sufficient). When the government again offered the evidence, the district court tried to identify legitimate Rule 404(b) purposes. The court accepted the government’s vague arguments and identified three non-propensity uses for the evidence: identity, absence of mistake, and knowledge. The majority explains correctly, in my view, that the Rule 404(b) evidence here had nothing to do with absence of mistake or knowledge. Op. at 1151-52. The absence-of-mistake theory was wrong precisely because it was really a propensity theory in disguise. The cocaine could rebut the idea that the government was mistaken about Gomez only by showing that he has a propensity toward involvement with cocaine. Op. at 1152. And in any event, the absence-of-mistake theory for Rule 404(b) evidence refers to the absence of a mistake on the part of the defendant, not the government investigators. The knowledge theory of admission was never developed and has no real basis here. So the majority and I agree that two of the three grounds given by the district court for exercising its discretion to admit the evidence were in fact erroneous.
The only remaining leg of the district court’s now unstable three-legged stool for admitting this evidence is that it tended to show identity — that Gomez was the voice of “Güero” in the telephone intercepts. The majority describes the chain of inferences to show identity as “not particularly compelling.” Op. at 1155. That’s an understatement. The identity rationale for admitting the user quantity evidence is itself just a thin veil over what is really just propensity evidence. Neither the district court, the government, nor the majority has articulated that chain of inferences in a persuasive way that does not include sheer propensity. This use has the same flaw as the absence-of-mistake theory. It boils down to a pure propensity theory.
*1161 The best argument that can be made for the district court’s admission of the evidence is that the cocaine was found in a house associated with one of the intercepted telephones used in arranging cocaine deliveries rather than in an unrelated location. The logic appears to be that because Gomez possessed the cocaine in a house associated with the conspiracy rather than in an unrelated location, the fact of possession becomes probative of identity rather than mere propensity. The majority seems to adopt this distinction when it recognizes that possessing cocaine at the same time in a location removed from the conspiracy would tell a juror nothing about whether Gomez was involved in the conspiracy. Op. at 1153.
The problem is that the user quantity of cocaine discovered almost four weeks later simply has not been linked to the earlier distribution conspiracy by anything except that location. For the sake of argument, one can speculate that perhaps the user quantity was a leftover from an earlier delivery, but the same could be said of any user quantity. Possession of this small quantity says nothing probative about whether the possessor had any role in the upstream large-scale distribution conspiracy. Without a closer link between the user quantity in the pocket and the earlier conspiracy, the only inference that could be made to suggest that Gomez rather than Victor Reyes was on the phone calls is that it was Gomez because he was involved in some way with drugs. This is a pure propensity inference that Rule 404(b) forbids. A person’s possession of a small user quantity of cocaine provides no useful information about that person’s involvement in large-scale distribution, except through the prohibited inference of propensity.
United States v. Brown, 471 F.3d 802 (7th Cir.2006), discussed in the majority opinion, is a good example of when evidence of other involvement with drugs may be probative of identity without depending on propensity inferences, but it is readily distinguishable on decisive grounds. Brown’s defense at trial was that he did not know the seller from whom he was charged with buying drugs and that the police had mistakenly identified him. The prosecution used Rule 404(b) evidence of Brown’s prior drug dealings with the same seller to show that the identification of Brown was correct. This use of other drug activity was probative of identity because it showed that Brown had actually dealt with the person he claimed to have nothing to do with. The drug activity showed that Brown had a drug-dealing relationship with the seller and allowed the jury to draw an inference of identity based on Brown’s relationship with the seller rather than the more general fact that Brown had some earlier involvement with illegal drugs. There is no comparable link between the user quantity of cocaine here and the charged offenses or the issue of identification.
This would be a very different case if the police had found in Gomez’s room a larger quantity of cocaine suitable only for distribution, or if they had found other evidence tied to distribution, such as scales, packaging material, etc. With such evidence from a later search indicating that Gomez was involved in cocaine distribution at the location where the large-scale deliveries had been made, the chain of inferences to show identity would be much shorter and more reasonable and would not depend solely on propensity. (In fact, the police did find distribution materials at the house, but they were in someone else’s bedroom. That evidence could not be linked to Gomez.) Without a clearer link to cocaine distribution, as opposed to mere use, the Rule 404(b) evidence used against Gomez was simply too tenuous and too prejudicial to admit.
*1162 The majority correctly points out that we apply a deferential standard of review to Rule 404(b) questions and the related Rule 403 balancing inquiry, asking only whether the district court abused its discretion by admitting the evidence. In this troublesome area of the law, however, we have emphasized that we need to see “a principled exercise of discretion” by the district court. United States v. Albiola, 624 F.3d 431, 438 (7th Cir.2010), quoting United States v. Beasley, 809 F.2d 1273, 1279 (7th Cir.1987) (reversing convictions affected by Rule 404(b) evidence). The majority and I agree that two of the three grounds given by the district court for exercising its discretion to admit the evidence were in fact erroneous. When two of the three grounds relied upon for admission collapse under minimal scrutiny and the court has difficulty articulating a basis for the third, that ought to be a strong signal that the district court’s exercise of discretion was not sound. Moreover, when the district court fails to show that it engaged in the Rule 403 balancing inquiry — here not mentioning the word “prejudice” even once — the record does not show a sound exercise of discretion to which we should defer.
In an effort to minimize the prejudice from the evidence, the majority also relies on the district court’s limiting instruction. The court told the jury it could consider the later discovery of the user quantity of cocaine only “on the question of identity, absence of mistake or accident, and knowledge.” As a general matter, one can question how useful such limiting instructions are when a jury might easily slide toward the forbidden propensity inference in its use of Rule 404(b) evidence. See generally Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (limiting instruction could not cure problems presented by defendant’s inability to cross-examine declarant when co-defendant’s confession is admitted; “there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored”). In fact, the advisory note to Rule 403 expressly instructs courts to consider “the probable effectiveness or lack of effectiveness of a limiting instruction.”
It is true that in Rule 404(b) eases, we have often trusted the effectiveness of limiting instructions, though without necessarily giving the question close empirical attention. E.g., United States v. Denberg, 212 F.3d 987, 994 (7th Cir.2000) (“this court has held many times that limiting instructions are effective in reducing or eliminating any possible unfair prejudice from introduction of Rule 404(b) evidence,” and collecting cases); see also United States v. Vargas, 552 F.3d 550, 557 (7th Cir.2008); United States v. Moore, 531 F.3d 496, 500 (7th Cir.2008).
In fact, however, there is good reason to question the effectiveness of limiting instructions when it comes to Rule 404(b) evidence, particularly in a case like this. Social science experiments using mock jurors find that jurors are more likely to convict when they have heard evidence of a prior conviction and that limiting instructions are often ineffective at guiding jurors’ use of such evidence. E.g., Edith Greene & Mary Dodge, The Influence of Prior Record Evidence on Juror Decision Making, 19 L. & Hum. Behav. 67, 76-77 (1995) (finding that judge’s limiting instructions were ineffective in guiding jurors’ use of prior record evidence, and collecting prior research reaching similar conclusions); Kerri L. Pickel, Inducing Jurors to Disregard Inadmissible Evidence: A Legal Explanation Does Not Help, 19 L. & Hum. Behav. 407 (1995) *1163 (finding varied juror responses to limiting instructions, including instructions where explanation “back-fired”); see also J. Alexander Tanford, The Law and Psychology of Jury Instructions, 69 Neb. L. Rev. 71, 86-87 (1990) (citing earlier experiments that “all show similar results”); Amos Tversky & Daniel Kahneman, Judgment Under Uncertainty: Heuristics and Biases, 185 Sci. 1124, 1124-25 (1974) (concluding that individuals do not properly adjust their probability estimates upon receiving new information, especially when original information resembles issue in question). Particularly troubling for this case are studies that show jurors are especially influenced by evidence of other bad acts that resemble the case before them. See Joel D. Lieberman & Jamie Arndt, Understanding the Limits of Limiting Instructions: Social Psychological Explanations for the Failures of Instructions to Disregard Pretrial Publicity and Other Inadmissible Evidence, 6 Psychol. Pub. Pol’y & L. 677, 686-87 (2000), citing R.L. Wissler & M. J. Saks, On the Inefficacy of Limiting Instructions, 9 L. & Hum. Behav. 37 (1985). Limiting instructions work best when the instructions arouse jurors’ suspicions as to the problems with considering such evidence (e.g., reliability). Id. at 688.
This research about limiting instructions in general and Rule 404(b) limiting instructions in particular should at least make us cautious about putting too much confidence in those instructions. At a minimum, though, for limiting instructions to work the jury must be able to understand the instruction. To return to the specific problems in this case, the limiting instruction the court gave was surely a confusing mystery to the jury. The majority and I agree that two-thirds of the instruction was simply wrong. The Rule 404(b) evidence had no relevance to any supposed absence of mistake or to Gomez’s knowledge. Even the identity theory that the majority uses to salvage this conviction was itself not particularly compelling” and invited the prohibited propensity inference. We have said that a good test for Rule 404(b) evidence is to see if the district judge can actually explain its permissible use without leaning on sheer propensity. United States v. Miller, 673 F.3d 688, 701-02 (7th Cir.2012). Where the district judge, the prosecution, and the majority have had so much trouble articulating how the Rule 404(b) evidence related to the legitimate issue of identity, we should not assume that jurors would have managed to do so. Under these circumstances, we should not take any comfort from the usual limiting instruction.
In his comments on the Rule 404(b) evidence, the district judge simply never came to grips with how the presence of a user quantity of cocaine in Gomez’s room nearly four weeks after the end of the large-scale distribution conspiracy made his participation in the conspiracy any more likely without relying on general propensity. I would find that the admission of the Rule 404(b) evidence was an abuse of discretion and would reverse and remand for a new trial.

. Although I would reverse the convictions and remand for a new trial, I agree with the majority that the district court did not make a plain error by imposing the enhancement for obstruction of justice in calculating the applicable Sentencing Guidelines.