In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2915

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEENAN R. FERRELL,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-CR-595-1 — **Virginia M. Kendall**, *Judge.*

ARGUED APRIL 13, 2015 — DECIDED NOVEMBER 4, 2015

Before WOOD, *Chief Judge*, and ROVNER, *Circuit Judge*, and
SPRINGMANN, *District Judge.**

SPRINGMANN, *District Judge.* Dr. Keenan Ferrell appeals two
evidentiary rulings made by the district court in connection
with his criminal trial for Medicare fraud. Ferrell wanted to
present statements that the district court barred as hearsay,

---

* Of the Northern District of Indiana, sitting by designation.

rejecting Ferrell's argument that they qualified as "statements against interest." Fed. R. Evid. 804(b)(3). The district court also admitted evidence offered by the Government after ruling that witness's testimony did not constitute impermissible character evidence. Fed. R. Evid. 404(b). We find the district court did not abuse its discretion and affirm both rulings.

## I. BACKGROUND

On June 25, 2013, a jury found Ferrell and Bryce Woods guilty of six counts of healthcare fraud for violating 18 U.S.C. § 1347. On August 19, 2014, Ferrell was sentenced to eighty-eight months of imprisonment.

Ferrell filed this appeal to challenge the district court's evidentiary rulings. First, Ferrell asks us to determine whether the district court erred when it refused to admit two out-of-court statements made by William Woods,[1] and contained in a voicemail and an email. The district court held that these statements were hearsay and did not fall within Rule 804(b)(3)'s hearsay exception. The district court held that although Woods was unavailable to testify, Woods's statements were not against his interest and the corroborating circumstances did not indicate that his statements were trustworthy. Thus, the district court granted the Government's motion in limine to bar Ferrell from introducing any of Woods's recorded statements.

---

[1] Although Bryce Woods was a co-defendant, William Woods is mentioned throughout this Opinion and will be referred to as "Woods." Also, William Woods was identified as "Provider A" in the indictment and district court filings.

Second, Ferrell contends that the district court admitted improper propensity evidence, in violation of Rule 404(b), when it allowed Dr. Herbert Shriver to testify regarding Ferrell's conduct in Texas. Although the district court primarily held Shriver's testimony was admissible as direct evidence of the charged offense, the district court held in the alternative that Shriver's testimony was admissible under Rule 404(b)(2) because the testimony: (1) showed Ferrell's intent and motive to commit fraud; (2) illustrated the similarity and contemporaneous nature of Ferrell's acts; and (3) had high probative value that was not substantially outweighed by the risk of unfair prejudice.

Ferrell was a doctor of psychology and a professor of psychology at Roosevelt University. In 2000, Ferrell became licensed to practice psychology in Illinois. In December 2000, Ferrell applied to become a provider in the Medicare program and was approved. Medicare assigned Ferrell a unique provider number, which Medicare used to review, process, and pay claims. No later than 2001, Ferrell owned and operated two companies: Inner Arts, Inc. ("Inner Arts") and Take Action, Inc. ("Take Action"). These companies offered psychological therapy to individuals and groups in nursing homes, rehabilitation facilities, and individual homes. Ferrell used his unique provider number to submit claims to Medicare for psychotherapy sessions he purportedly conducted.

Brothers Bryce and William Woods worked for Ferrell and the two companies. Bryce Woods was a co-defendant in this case and never held a license to practice psychology in Illinois. William Woods obtained a psychology license in 2004, but Illinois later suspended the license and disciplined Woods.

From June 1, 2006 to June 1, 2011, Ferrell and Bryce Woods caused approximately 33,895 individual claims to be submitted to Medicare. Each claim listed Ferrell as the provider of the therapy services and bore Ferrell's Medicare provider number, the date or dates of service, the number of services performed, and a five-digit CPT code that identified the type of service provided to a beneficiary. Bryce Woods, who operated under Ferrell's direction, was responsible for submitting these claims to Medicare.

The vast majority of the claims submitted to Medicare using Ferrell's unique Medicare provider number sought payment for services rendered under CPT code 90818. To lawfully bill Medicare for services under CPT code 90818, the psychotherapy session had to be (1) a face-to-face, in-person meeting with the patient; (2) forty-five to fifty minutes long; and (3) personally conducted by the licensed provider or conducted by another licensed person under the provider's direct supervision. "Direct supervision" means "the provider had to be in the nursing home at the time that the session was conducted and had to be readily available to the therapist conducting the session." Gov't's/Appellee's Br. 4.

Although Ferrell was aware of these requirements, Ferrell and Bryce Woods engaged in a scheme to bill Medicare for psychotherapy sessions that either did not occur, or did not meet CPT code 90818's requirements. Ferrell enlisted his unlicensed psychology students at Roosevelt University to work for Inner Arts and Take Action. These unlicensed students were assigned to patients and visited with patients who resided at nursing homes. Ferrell did not supervise these unlicensed students or otherwise visit the nursing homes. The

unlicensed students prepared notes of their visits with patients, and gave these notes and other documents to Bryce and William Woods. At Ferrell's direction, Bryce Woods then billed Medicare for these visits. These claims to Medicare listed CPT code 90818 and represented that Ferrell personally saw each patient.

Similarly, Bryce Woods, who was not licensed to practice psychotherapy, would visit with patients and bill Medicare at Ferrell's direction using Ferrell's Medicare provider number. This mirrored the pattern carried out with the unlicensed students, however, Bryce Woods's sessions with patients included Bryce Woods playing his guitar and singing to patients. Additionally, Ferrell and Bryce Woods fraudulently billed Medicare when they knew sessions did not last the required forty-five minutes, the patient refused to meet, or the patient was already deceased.[2] In total, Ferrell and Bryce Woods sought approximately $3.5 million from Medicare, and Medicare paid approximately $1.5 million.

On June 2, 2011, federal agents executed a search warrant at the office of Inner Arts and Take Action. On July 29, 2011, nearly a month before Ferrell and Bryce Woods were indicted, Woods sent an email and left a voicemail for Ferrell's counsel at the time. Woods's email stated he would testify that Ferrell and Bryce Woods told him that he needed to complete his notes in a timely manner, but he fell behind and did not inform either Ferrell or Bryce Woods. Woods also wrote that Medicare

---

[2] At trial, the Government's exhibit showed that Ferrell's Medicare provider number was used on 106 separate claims for face-to-face psychotherapy sessions with patients who were deceased before the date of service.

never informed their office about problems with billing practices, their office was committed to proper practice and billing, and that Ferrell was a person who would never commit Medicare fraud. Woods's voicemail included statements similar to the email.[3] The district court denied Ferrell's pretrial motion that sought to admit the entirety of the email and voicemail at trial.

At trial, the Government relied upon the testimony of Shriver. Shriver had pled guilty to healthcare fraud in federal court in Texas and was cooperating with the Government against Ferrell. Shriver testified about his professional and personal relationship with Ferrell, as well as certain admissions Ferrell made to Shriver about Ferrell's psychotherapy practice. This included that Ferrell operated psychotherapy practices in several states and that Ferrell was in a poor financial condition

---

[3] The transcript of Woods's voicemail reads as follows: "I work with Dr. Keenan Ferrell and I would like to speak to you if I could please. This situation with the investigation of Medicare documentation is entirely my fault. Dr. Ferrell, I have known him over 20 years now, and he loves the law. He's a respectful, abiding person and he has told me from the start that Medicare notes/everything, has to be done properly and on time and I didn't take that seriously and he kept telling me that there were serious consequences and he trusted me to do the right thing with the Medicare documentation for the clients I was seeing and I didn't do that and I lied to him and said that I had been doing the notes on time and I hadn't and I said notes were done when they hadn't been done yet. If your client was seen or was billed for but I did not do the documentation and keep it up properly so there is missing documentation, a lot of it. So, please I would like to talk to you to see if there is anything I can do to implore these investigators to know that Dr. Ferrell did nothing wrong. It's entirely my fault. I'm the one that should be losing my license and facing consequences for this because I disregarded the law and did this." Gov't's/Appellee's App. 1.

during the period of fraudulent billing. The district court had denied Ferrell's pretrial motion to bar Shriver's anticipated testimony. We now address Ferrell's arguments on appeal in turn.

## II. DISCUSSION

### A.  Rule 804(b)(3) Hearsay Exception

To reverse a district court's decision on the admissibility of hearsay statements, we must conclude that the district court abused its discretion. *United States v. Love*, 706 F.3d 832, 839 (7th Cir. 2013). "Under this standard of review we will not reverse if we merely conclude that we would have reached a different decision if asked to consider the issue in the first instance; rather, 'the district court's decision must strike us as fundamentally wrong.'" *Hall v. Norfolk S. Ry.*, 469 F.3d 590, 594 (7th Cir. 2006) (quoting *Johnson v. J.B. Hunt Transp., Inc.*, 280 F.3d 1125, 1131 (7th Cir. 2002)). The district court receives such substantial deference regarding the admissibility of evidence because "we are not in a position to observe the trial proceedings first-hand and gauge the impact of the evidence in the context of the proceedings as a whole." *United States v. Boswell*, 772 F.3d 469, 477 (7th Cir. 2014) (citing *United States v. Boone*, 628 F.3d 927, 932 (7th Cir. 2010)).

Ferrell argues that the district court abused its discretion when it denied his motion in limine and excluded Woods's out-of-court statements, as contained in his voicemail and email. Ferrell submits that Woods's hearsay statements should

have been admitted under Rule 804(b)(3) because they were against his penal interest and were sufficiently corroborated.

Although hearsay is generally inadmissible, Rule 804(b)(3) allows its admission where the proponent demonstrates that "(1) the declarant is unavailable as a witness, (2) the statement was against the declarant's penal interest when made, and (3) corroborating circumstances clearly suggest that the statement is trustworthy." *United States v. Jackson*, 540 F.3d 578, 588 (7th Cir. 2008) (quoting *United States v. Loggins*, 486 F.3d 977, 981 (7th Cir. 2007)). The district court found that Woods was unavailable to testify because he would assert his Fifth Amendment right against self-incrimination. *Id.* The parties do not dispute this. Therefore, we address only the second and third prongs. We agree with the district court that Ferrell did not meet his burden on either prong.

### 1.  *Against Declarant's Penal Interest*

To be against the declarant's penal interest, a remark must be "individually self-inculpatory." *Williamson v. United States*, 512 U.S. 594, 599 (1994). Further, the court must examine a declarant's narrative to separate a declarant's exculpatory statements from the inculpatory statements, and then exclude the exculpatory statements. *Id.* at 600–01; *see also United States v. Nagib*, 56 F.3d 798, 804 (7th Cir. 1995). Despite this, the proponent may not sever the self-inculpatory statements from their context to alter the meaning of the statements. *Williamson*, 512 U.S. at 603 ("[W]hether a statement is self-inculpatory or not can only be determined by viewing it in context.").

Woods's voicemail and lengthy email contain exculpatory statements and admissions that are unrelated to the charges in Ferrell's indictment. Both the voicemail and email convey Woods's belief that neither he, Bryce Woods, nor Ferrell committed healthcare fraud. Woods defended Ferrell by writing: "Dr. Ferrell consistently speaks about the importance of ethics and the value of working within the policies and guidelines that have been set forth by Medicare"; "neither Dr. Ferrell, nor any of us involved in the company were purposefully defrauding Medicare"; "[b]oth Bryce and I were in constant contact with Medicare specialists checking on claims, verifying services, checking on remittances, clarifying policies regarding documentation, supervision, credentials needed, etc. We were never told there was a problem." Gov't's/Appellee's App. 2–3. In his voicemail, Woods reiterated that "[Dr. Ferrell] loves the law," and avowed Ferrell's innocence by stating that he wanted "to implore these investigators to know that Dr. Ferrell did nothing wrong." Gov't's/Appellee's App. 1. These repetitive pronouncements exculpating Ferrell are not statements against Woods's interest. *United States v. Bonty*, 383 F.3d 575, 579–80 (7th Cir. 2004) ("[Declarant]'s statement—that [the defendant] had nothing to do with the [criminal events]—did not tend to implicate [the declarant] and was not against [the declarant]'s penal interest.").

Further, the statements by Woods that might be construed as self-inculpatory are not "individually self-inculpatory." Ferrell asserts that "[Woods] admits to falsifying Medicare billing forms." Def.'s/Appellant's Br. 13. The district court disagreed and we agree that the text, in context, does not support Ferrell's view. Although Ferrell's brief does not

identify the specific language through which Woods admits to falsifying Medicare billing forms, Ferrell's counsel offered more direction at oral argument. He directed us to Woods's voicemail, where Woods states, "[i]t's entirely my fault. I'm the one that should be losing my license and facing consequences for this because I disregarded the law and did this." These statements are certainly inculpatory, but as to what depends on the contextual meaning of "it's" and "this." *Williamson*, 512 U.S. at 603.

Woods's voicemail details how he did not complete his Medicare notes in a timely manner and lied to Ferrell about being caught up, which resulted in missing documentation. Tellingly, Woods's voicemail implies that the government's investigation of Ferrell is focused on the missing documentation that Woods was supposed to complete. Several passages in his email further illustrate Woods's perception that the government's investigation was prompted by missing documentation that Woods was responsible for completing.[4] Contrary to Woods's perception of events, the government investigation was not focused on missing documentation. The government pursued Ferrell and Bryce Woods for documentation that was extraneous or fraudulent. Thus, Woods incul-

---

[4] Woods's email began, "I will testify that I was consistently told by both Dr. Ferrell and Bryce that I was to complete and turn in all of my notes on time. When I fell behind I did not report this to either Dr. Ferrell or Bryce as I intended to get the notes caught up and turned in." Gov't's/Appellee's App. 2. Similarly, the email ended, "[e]ven though you are not my lawyer, I have nothing to hide. I got behind with my notes, and I deserve to face the consequences of that choice, not Dr. Ferrell." Gov't's/Appellee's App. 4.

pated himself as to negligently performing his job, not fraudulently submitting Medicare forms.

Ferrell also argues that Woods's recorded statements are against his penal interest because they show Woods's inside knowledge. Ferrell correctly notes that "[s]tatements that 'demonstrate a declarant's inside knowledge of the crime'" support finding a statement to be sufficiently inculpatory. Def.'s/Appellant's Br. 13 (quoting *United States v. Volpendesto*, 746 F.3d 273, 288 (7th Cir. 2014)). This is not met here. Specific portions of Woods's statements actually reveal his ignorance of the scheme. First, Woods's inculpatory statements only reference delayed or missing documentation. Of course, this would not support a fraud claim, and it is not the conduct for which the government pursued Ferrell. Although Woods makes a statement in his email about one instance of billing a deceased patient,[5] this statement is exculpatory and shows that Woods was unaware of the additional 105 instances of billing deceased clients. Woods's portrayal of this incident as merely an innocent error, rather than as part of an elaborate, fraudulent scheme for which he accepts responsibility, proves Woods was outside the criminal loop. Second, Woods's references to complying with Medicare policies, such as that Medicare never informed them of a problem, are exculpatory and Woods accepts no ownership of these actions.

---

[5] Woods accounted for the error by explaining, "[t]he client of ours that was billed for after he had passed away was an error caused by having not removed this individual from the client list after their passing. This individual's widow was contacted by Bryce who apologized to her, and explained that this was an unfortunate clerical error, but that Inner Arts/Take Action was not paid for the service." Gov't's/Appellee's App. 2.

Based on this context and the nature of the inculpatory statements, the confessions to which Ferrell directs us are admissions of negligent job performance, not healthcare fraud. The district court did not abuse its discretion in holding that Woods's voicemail and email were not against his penal interest.[6]

### 2.  *Corroborating Circumstances*

We also find that the district court correctly held that no corroborating circumstances existed to clearly suggest the trustworthiness of Woods's statements. *Jackson*, 540 F.3d at 588 ("The district judge's determination as to the trustworthiness of an out-of-court statement is entitled to considerable deference and should be upheld unless 'clearly erroneous.'") (citing *United States v. Amerson*, 185 F.3d 676, 684 (7th Cir. 1999)). Rule 804(b)(3) "expressly requires the exclusion of out-of-court statements offered to exculpate the accused unless there are corroborating circumstances that 'clearly indicate' the trustworthiness of the statement." *Id.* at 589 (quoting *United States v. Hall*, 165 F.3d 1095, 1112 (7th Cir. 1999)). This is because the "corroboration requirement reflects 'a long-standing concern … that a criminal defendant might get a pal to confess to the crime the defendant was accused of, the pal figuring that the probability of his actually being prosecuted either for the crime

---

[6] Ferrell also argues that the jury should have decided whether Woods's statements were against Woods's penal interests for purposes of admissibility under Rule 804(b)(3). We have repeatedly stated that under Rule 104, "it is the judge's role to determine the admissibility of evidence." *Jackson*, 540 F.3d at 590 (collecting cases).

or for perjury was slight." *United States v. Henderson*, 736 F.3d 1128, 1130 (7th Cir. 2013) (quoting *United States v. Silverstein*, 732 F.2d 1338, 1346 (7th Cir. 1984)); *see also United States v. Garcia*, 986 F.2d 1135, 1140 (7th Cir. 1993) ("[I]f the two involved parties *do not* have a close relationship, one important corroborating circumstance exists.") (emphasis added).

The longstanding personal and professional relationship between Ferrell and Woods triggers the concerns this rule is designed to guard against. In his voicemail, Woods states he has known Ferrell for over twenty years. Further, the parties stipulated that "Woods had worked with Ferrell for years." Gov't's/Appellee's Br. 22. Woods's financial livelihood also depended upon Ferrell's companies, Inner Arts and Take Action, as Woods used the companies' bank accounts for his personal expenses. Although the district court's determination of a statement's trustworthiness is based on the totality of the circumstances, *Henderson*, 736 F.3d at 1133, we have identified the relationship between the declarant and the exculpated party as one of the non-exhaustive factors. *Nagib*, 56 F.3d at 805 (identifying the considerations as (1) the relationship between the confessing party and the exculpated party; (2) whether the confessor made a voluntary statement after being advised of his *Miranda* rights; and (3) whether there is any evidence that the statement was made in order to curry favor with authorities); *see also Jackson*, 540 F.3d at 589 ("We have never said, however, that the considerations we identified in *Nagib* were the only factors to be weighed in determining whether corroborating circumstances exist.") The close relationship between Woods and Ferrell strongly supports the district court's decision to exclude Woods's statements. *Henderson*, 736 F.3d at

1132–33 (holding that even though some factors supported corroboration, the district court did not err in excluding the statement after deciding the declarant was trying to help his friend).

Also, Woods's voluntary decision to contact Ferrell's counsel does not indicate that Woods's statements are trust-worthy. As noted previously, Woods's voicemail and email did not contain inculpatory statements regarding healthcare fraud. Instead, Woods made exculpatory statements that shifted blame to Medicare and described Ferrell's honesty. As the district court noted, Woods's statements that he did not do anything wrong do not bolster trustworthiness. In fact, Ferrell told investigators that Woods would tell "huge lies" and dismiss those lies as "little white lies." Gov't's/Appellee's Br. 9, 23. This undermines Ferrell's argument and supports the district court's conclusion that the circumstances did not clearly indicate trustworthiness.

To rebut the district court's finding of insufficient corroboration, Ferrell cites to the testimony of his former student and employee, Ms. Natalie Hall, who appeared as a Government witness. Hall testified that she mostly interacted with Bryce and William Woods, and she gave her notes from patient visits to both of them. Although Hall's testimony is consistent with Woods's voicemail and email, where he explained his role in the documentation process, the parties do not dispute that Woods was involved with documentation. By itself, consistency between Hall's testimony and Woods's recorded statements on this uncontested issue does not amount to corroborating circumstances clearly indicating trustworthiness. *Henderson*, 736 F.3d at 1133 (explaining that declarant's

presence in the vehicle when defendant-driver was arrested for possession of a firearm was merely consistent with declarant's statement, in which declarant accepted ownership of the firearm, and not clearly corroborative); *Silverstein*, 732 F.2d at 1347 (concluding that declarant being out of his cell—meaning declarant had the opportunity and ability to commit the murder to which he confessed—was merely consistent with the confession (not clearly corroborative) because declarant's statement did not show unique knowledge of the murder). In sum, Hall's testimony that Woods's job involved documentation does not clearly indicate the trustworthiness of Woods's statement. Some consistency does not compel the district court to admit the declarant's statement. *Henderson*, 736 F.3d at 1133 ("[I]t is not enough for [the defendant] to show '*some* corroborative evidence' of [the declarant's] statement … ." (citation omitted) (quoting *United States v. Garcia*, 897 F.2d 1413, 1421 (7th Cir. 1990))).

Based on the record presented, we hold that the district court acted well within its discretion when it refused to admit Woods's voicemail and email.

### B. Rule 404(b)

As with Ferrell's hearsay question, we apply the same deferential standard of review and ask whether the district court abused its discretion by admitting the Government's "crimes, wrongs, or other acts" evidence. Fed. R. Evid. 404(b); *Hall*, 469 F.3d at 594.

Ferrell argues that the district court abused its discretion by admitting impermissible propensity evidence that it should have excluded under Rule 404(b). Specifically, Ferrell argues that Shriver's testimony is not relevant without relying upon propensity evidence. Ferrell also argues Shriver's testimony only addresses Ferrell's conduct in Texas, which does not support the charges in the indictment. We disagree.

Under Rule 404(b), relevant evidence of a crime, wrong, or other act is inadmissible if the proponent offers the evidence to show a person's propensity to act a certain way. Fed. R. Evid. 404(b). Regardless, the district court may admit other-act evidence if the evidence is offered for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*

We recently recrafted this Circuit's test for evaluating the admissibility of other-act evidence to create "a more straight-forward rules-based approach." *United States v. Gomez*, 763 F.3d 845, 853 (2014) (en banc) ("This change is less a substantive modification than a shift in paradigm that we hope will produce clarity and better practice in applying the relevant rules of evidence."). Although *Gomez* clarifies how the district court should analyze Rule 404(b) evidence, it remains intact that Rule 404(b) does not apply to direct evidence of the crime charged. *See id.* at 863; *see also United States v. Adams*, 628 F.3d 407, 414 (7th Cir. 2010) ("So, if the evidence is admitted as direct evidence of the charged offense, Rule 404(b) is not applicable. Specifically, evidence directly pertaining to the defendant's role in a charged conspiracy is not excluded by Rule 404(b).") (citation omitted); *United States v. Alviar*, 573

F.3d 526, 538 (7th Cir. 2009) ("The contested evidence proved specific portions of the indictment. It did not concern 'other crimes, wrongs or acts,' but it concerned the charged crime. When evidence is embraced by the conspiracy in the indictment, the court need not resort to Rule 404(b) analysis."). Of course, the district court may still choose to exclude relevant direct evidence under Rule 403. *Adams*, 628 F.3d at 414.

Before trial, the district court granted the Government's motion to allow Shriver to testify at trial. The theory of admissibility for much of Shriver's expected testimony was that it constituted direct evidence of the charged offense.[7] In this appeal, Ferrell's brief does not challenge Shriver's direct evidence testimony. Further, at oral argument, Ferrell's counsel conceded "[c]ertain testimony that Dr. Shriver gave was indeed direct evidence regarding statements Dr. Ferrell made about his actions here in Illinois." Since Ferrell does not argue that Shriver's direct evidence testimony was admitted in violation of Rule 403, we will not address the district court's decision to admit portions of Shriver's testimony as direct evidence. *United States v. Phillips*, 745 F.3d 829, 833 (7th Cir. 2014) (refusing to review the district court's admission of direct evidence when appellant only appealed claiming inadmissibil-

---

[7] Specifically, the district court ruled that "Ferrell's alleged admissions to Shriver that he used the Woods brothers and students to visit patients and that he billed for those sessions is directly relevant to the scheme charged. It directly contradicts Ferrell's defense that he was unaware these practices were occurring. Therefore, it tends to prove that Ferrell participated in the scheme knowingly and with the intent to defraud. Ferrell's alleged statement regarding his financial needs is also direct evidence of his motive to engage in the scheme charged." Def.'s/Appellant's App. 48.

ity under Rule 404(b), and instead did not argue independently that Rule 403 should have barred the direct evidence).

We now turn to Ferrell's Rule 404(b) arguments. As the Government notes, Ferrell's brief does not quote any portions of Shiver's testimony that he believes violated Rule 404(b). Instead, Ferrell's brief alludes to the points where Shriver mentioned Texas, Louisiana, Iowa, and Michigan. Ferrell's counsel attempted to clarify this point at oral argument by suggesting the impermissible propensity evidence consisted of "parts of [Shriver's] testimony related to Dr. Ferrell's statement that he was setting up other practices in Texas, Iowa, Michigan, and New Mexico." Ferrell argued that the government did not indict him for conduct in Texas, so Shriver's testimony addressing Ferrell's state of mind in Texas is irrelevant. Ferrell further contends that the chain of reasoning supporting the non-propensity purpose is inseparable from the propensity effect, meaning that "the inescapable conclusion the jury drew from Shriver's testimony is that Mr. Ferrell is a serial defrauder." Def.'s/Appellant's Br. 17. Thus, in Ferrell's view, Shriver's testimony "relied on Ferrell's propensity to commit Medicare fraud," and showed "that if Mr. Ferrell committed fraud in Illinois, he must have committed similar frauds in other states." Def.'s/Appellant's Br. 18. In light of our recent decision in *Gomez* and Shriver's trial testimony, we find Ferrell's arguments unpersuasive.

When an opponent objects to the introduction of other-act evidence, the proponent of the evidence must first show "that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *Gomez*, 763 F.3d at 860 (citing Fed. R. Evid. 402, 402, 404(b)).

Exclusion is not required merely because some propensity inference can be drawn from the other-act evidence; rather, the other-act evidence is admissible provided that the other-act evidence's relevance to "another purpose" is established by "some propensity-free chain of reasoning." *Id.* at 856, 860 ("[The other-act evidence's] relevance to 'another purpose' must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case."). Once the proponent makes this showing, the district court must engage in Rule 403 balancing to determine whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice. *Id.* at 860. The court must also be mindful that even though intent is an element of the offense for a specific intent crime, Rule 404(b) is not "a rule of automatic admission." *Id.* at 858–59 (quoting *United States v. Conner*, 583 F.3d 1011, 1022 (7th Cir. 2009)). Thus, with specific intent crimes, "the degree to which the non-propensity issue actually is contested" may affect admissibility. *Id.* at 859 (explaining that Rule 402 and Rule 403 still apply when other-act evidence is offered to prove intent (citing *United States v. Earls*, 704 F.3d 466, 471 (7th Cir. 2012))).

At trial, Shriver testified, "[Ferrell] mentioned that he had a practice … providing services at nursing homes, in multiple states … . I thought he might be interested in helping me out in southwest Texas. And so we would have discussions concerning the business of coming down." Shriver explained that these conversations, where he and Ferrell would "exchange information on our practices and also discuss [Ferrell]

coming down," occurred during lunches and on the telephone, and this is when Shriver "found out about what [Ferrell] did." When the Government asked Shriver to elaborate on Ferrell's activities, Shriver testified:

> Well, I found out that—he told me what he was doing, that he had a practice in evaluating Social Security claims, from what I understood, in Florida and another one with Social Security here in Illinois. I knew about a nursing home he had in Iowa. I believe there was one in Michigan. Illinois. And I know he was trying to develop Louisiana and New Mexico. And I talked to him about coming to Texas. And during that time, he also—he told me about what he did in the nursing homes. And it seemed like he would do some of the initials, and then he would have therapists, graduate students, various students or people that had graduated from Roosevelt where he taught, and they would fly or drive to these nursing homes and provide psychological services, of which he was available by telephone.

This testimony is consistent with the anticipated testimony upon which the district court based its Rule 404(b) ruling.[8]

---

[8] The Government informed the district court that it anticipated Shriver would testify "Ferrell told Shriver that Ferrell ran a practice treating nursing home patients who lived in several states, and that Ferrell used students, Defendant Woods, and William Woods to see patients at the nursing home." Def.'s/Appellant's App. 47.

Contrary to Ferrell's characterization of Shriver's testimony, it is less than obvious how it could cause a jury to only conclude that Ferrell is a "serial defrauder." Def.'s/Appellant's Br. 17. First, the word "fraud" only appeared three times in Shriver's direct examination, and all in reference to the charges against Shriver. Gov't's/Appellee's App. 15:18, 16:2, 18:8. Second, Shriver never testified that Ferrell committed fraud—in Illinois or any other state. Shriver's testimony showed that Ferrell had a propensity to practice psychotherapy in multiple states, which is not equivalent to a propensity to commit Medicare fraud in multiple states. Third, even if Shriver's testimony could be construed as saying Ferrell committed certain acts, the indictment charged Ferrell and Bryce Woods with carrying out a criminal scheme in "Illinois, and *elsewhere*." Gov't's/Appellee's Br. 33 (emphasis added).[9] Therefore, as the district court held, much of Shriver's testimony is direct evidence of the charged healthcare fraud. Despite this, to address Ferrell's Rule 404(b) arguments, we will assume

---

[9] Further, the indictment described this criminal scheme as being accomplished (1) by providing psychotherapy services to Medicare beneficiaries in nursing homes, (2) through unlicensed individuals, (3) when Ferrell was not directly supervising the sessions, (4) using Ferrell's Medicare provider number to bill Medicare, and (5) Ferrell and Bryce Woods submitted over $3 million in false and fraudulent claims to Medicare.

*arguendo* that the challenged portions of Shriver's testimony were admitted solely under Rule 404(b).[10]

The district court held Shriver's testimony was non-propensity evidence because it showed Ferrell's knowledge of the scheme and intent to defraud the government. Specifically, the district court found Shriver's testimony tended to prove that "Ferrell was aware unlicensed providers were conducting psychotherapy sessions in his name," and "that Ferrell knew claims were submitted to Medicare for these services." Def.'s/Appellant's App. 49. This is a propensity-free chain of reasoning. The jury was not asked to believe that because Ferrell "was the type of person who would break the law once, he must be the type of person who would break the law again." *United States v. Schmitt*, 770 F.3d 524, 534 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1537 (2015) (mem.). Instead, the Government was asking the jury to infer that because Ferrell was aware of how psychotherapy sessions were being conducted, and that Medicare was billed for them, Ferrell had knowledge and intended to commit Medicare fraud. *United States v. Anzaldi*, — F.3d — , Nos. 14-1206, 13-3844, 2015 WL 5172849, at *8–9 (7th Cir. Sept. 4, 2015) (holding that, when engaging in fraudulent tax scheme, defendant's request that checks be made out for less than $10,000 to hide her activity from the government showed propensity-free chain of reasoning that defendant intended to defraud the government and negated

---

[10] As we mentioned briefly at the outset of this Opinion, during the pretrial hearings the Government argued and the district court agreed that most of Shriver's testimony was admissible as a direct evidence of charges in the indictment. The district court framed its Rule 404(b) holding as one in the alternative.

good faith defense); *Schmitt*, 770 F.3d at 534–35 (holding the government offered a propensity-free chain of reasoning when the charge was felon in possession of firearm and it introduced evidence that defendant was (1) a drug dealer and (2) had large quantities of drugs in his home when arrested because it showed the "motive" for having the gun was to further drug dealing activities). Accordingly, *Gomez* makes no difference in the outcome.

The district court then engaged in Rule 403 balancing and ruled the testimony admissible. Healthcare fraud is a specific intent crime, *United States v. Natale*, 719 F.3d 719, 741–42 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1875 (2014) (mem.), and the district court found Ferrell's defense was that "he was unaware these practices were occurring." Def.'s/Appellant's App. 48. Thus, Ferrell's intent and knowledge was actually contested. *United States v. Richards*, 719 F.3d 746, 759 (7th Cir. 2013) ("[If] the defendant simply asserts his innocence in a more general way or argues his conduct failed to satisfy some other element of the crime *besides intent or knowledge*, prior bad acts evidence is inadmissible.") (emphasis added); *United States v. Miller*, 673 F.3d 688, 697 (7th Cir. 2012) ("[W]hile intent is at least formally relevant to all specific intent crimes, intent becomes more relevant, and evidence tending to prove intent becomes more probative, when the defense actually works to deny intent, joining the issue by contesting it."); *United States v. Meislin*, — F. Supp. 3d — , No. 5:14-CR-18, 2015 WL 3645724, at *2–5 (N.D.N.Y. June 11, 2015) (holding former co-worker's testimony that defendant's prior conduct—submitting bills to Medicare indicating a doctor was present when a doctor actually was not—was proper to show knowledge and intent

when defendant faced charges for engaging in identical conduct at a subsequent job and defendant contended she lacked requisite knowledge and intent for healthcare fraud). The highly probative value of Shriver's testimony is readily apparent, as it revealed Ferrell's awareness of sending unlicensed individuals to various nursing homes to conduct psychotherapy sessions in Ferrell's name. It also demonstrated Ferrell's intent to bill Medicare for these visits. Although this testimony is obviously prejudicial, we are convinced the district court engaged in "'a principled exercise of discretion'" and thought "through the relevance of and the potential prejudice posed by the proffered evidence." *United States v. Lee*, 724 F.3d 968, 977–78 (7th Cir. 2013) (quoting *United States v. Beasley*, 809 F.2d 1273, 1278–79 (7th Cir. 1987)).

Ferrell does not explicitly challenge the district court's ruling that Shriver's testimony about Ferrell's financial condition permissibly proved motive. However, since Ferrell insists the "other states" testimony was improper, and the discussion of Ferrell's debts included some references to Texas, we consider the admissibility of this testimony as well. Shriver testified that Ferrell said he owed a "debt to the government." Further, Shriver's testimony detailed how Ferrell's "credit cards didn't always work … rooms were problematic and occasional flight [sic] he couldn't make or they had to wait until some money got transferred, et cetera." Shriver also reported that Ferrell incurred a lot of expenses by booking last minute flights for multiple people, and in one instance, took a three-and-a-half-hour cab ride from San Antonio to Shriver's area on the Texas-Mexico border. The district court thought this testimony showed Ferrell's motive to commit the fraud

and that Rule 403 allowed admission because the testimony was highly probative as to Ferrell's financial needs driving him to intentionally submit fraudulent claims to Medicare.

The Government argues that this is not propensity evidence. Rather, Ferrell's debt drove him to make more money through unlawful means. The money Ferrell earned at Roosevelt University, through psychotherapy sessions with Medicaid patients, and by working for the Social Security Administration provided some income. In contrast, sixty-six percent of Ferrell's and Bryce Woods's total income came from Medicare claims, which amounted to approximately $1.5 million from fraudulent claims. Although some person may conclude a person who would incur and carry debt would also have a propensity to commit fraud, the proponent is not required to negate every imaginable propensity inference an observer might draw. *Gomez*, 763 F.3d at 856 ("This is not to say that other-act evidence must be excluded whenever a propensity inference can be drawn; rather, Rule 404(b) excludes the evidence if its relevance to 'another purpose' is established *only* through the forbidden propensity inference."). Further, the Government has not relied on such an improper propensity inference, and this is not the inescapable conclusion for which Ferrell's financial situation is being offered into evidence. *Compare United States v. Cunningham*, 103 F.3d 553, 556 (7th Cir. 1996) (stating that although propensity evidence and motive evidence may overlap in certain scenarios, there is no impermissible overlap when the other-act evidence shows the defendant's desire for pecuniary gain, to which the crime is instrumental, because the pecuniary gain could not be achieved as easily by lawful means), *with Lee*, 724 F.3d at 980

(barring a defendant's prior conviction for possession of crack cocaine in defendant's present trial for possession with intent to distribute because the government's argument that the possession conviction showed defendant's "familiarity with the cocaine business" and "was not some hapless fool" only invited the jury to infer propensity to engage in cocaine-related offenses). We have also been mindful that loose policing of Rule 404(b)'s exceptions historically appears in drug cases. *Gomez*, 763 F.3d at 853 (quoting *Miller*, 673 F.3d at 692). The district court acted reasonably by accepting the Government's reasoning centered around motive. Similarly, we are satisfied that the district court carefully considered whether the probative value was substantially outweighed by the risk of unfair prejudice.

Therefore, the district court did not abuse its discretion by admitting Shriver's testimony regarding Ferrell's conduct in various states as evidence of intent and knowledge. Likewise, Shriver's testimony of Ferrell's debts and expenses went to motive, not an impermissible propensity inference.[11]

## CONCLUSION

For the reasons set forth above, the district court did not abuse its discretion in refusing to admit Woods's recorded statements pursuant to Rule 804(b)(3). Likewise, the district court did not abuse its discretion in admitting Shriver's testimony describing Ferrell's other acts. We therefore AFFIRM the judgment of conviction.

---

[11] Because we hold that the district court did not abuse its discretion, we need not reach the Government's harmless error argument.