In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 19-1331

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARRIUS WASHINGTON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16-cr-477-1 — **Robert M. Dow, Jr.**, *Judge.*

_____

ARGUED NOVEMBER 14, 2019 — DECIDED JUNE 17, 2020

_____

Before MANION, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Darrius Washington was charged
with unlawfully possessing a firearm as a felon after police
officers saw him toss a gun into a residential yard. Before
trial the government moved to admit a video posted on
YouTube about three months before the arrest depicting
Washington holding what prosecutors argued was the same
gun. Over Washington's objection, the district judge permit-

ted the admission of still photos from the video but not the video itself. The jury found Washington guilty.

Washington challenges the admission of this evidence, arguing that the photos were irrelevant, inadmissible under Rule 404(b) of the Federal Rules of Evidence, and unfairly prejudicial. We disagree. As explained in *United States v. Miller*, evidence of recent past possession of the same gun is admissible for a nonpropensity purpose—namely, to show the defendant's ownership and control of the charged firearm—although evidence of past possession of a *different* gun would raise Rule 404(b) concerns. 673 F.3d 688, 694–95 (7th Cir. 2012).

Washington notes, accurately enough, that *Miller* was a case about constructive possession and his case involves a charge of actual possession. That distinction doesn't make a difference in the Rule 404(b) calculus. The judge properly admitted this evidence for a nonpropensity purpose and minimized its potential for unfair prejudice by limiting the government to still photos rather than the video itself. We affirm the judgment.

## I. Background

On the afternoon of May 12, 2016, Chicago Police Officers Bryant McDermott and Robert McHale were on patrol in a neighborhood on the south side of the city when they noticed Washington standing on a corner with his back to them. According to the officers' trial testimony, Washington turned his head as their unmarked squad approached and then began walking away. With his right hand, he removed a shiny, polished chrome handgun from the back of his waistband and tossed it over a wrought-iron fence into the front yard of a nearby house.

The officers pulled over, and Officer McDermott summoned Washington to their car. Washington immediately complied and walked toward them. As Officer McHale questioned him, Officer McDermott recovered the handgun from the yard. The officers then arrested Washington and transported him to the police station. A federal grand jury indicted him for unlawfully possessing a firearm as a felon. *See* 18 U.S.C. § 922(g).

Before trial the government moved to introduce a music video posted on YouTube about three months before the arrest depicting Washington and another person displaying a chrome handgun. The motion papers included a representative sample of still photos from the video. The government argued that the gun in the video was the same gun that was recovered from the yard based on certain notable similarities, including "engraved markings on the slide immediately to the right of [a] blemish or alteration; raised front and rear sight posts; dark-colored grips; exposed hammers; ejection ports located on [the] right side of [the] slide; and trigger guards with similar designs."

Washington objected to the admission of the video on several grounds: (1) the government could not prove that the gun in the video was the same gun that was recovered (or even that it was a real firearm); (2) the video constituted improper character evidence in violation of Rule 404(b); and (3) the prejudicial effect of the video substantially outweighed its probative value, so it should be excluded under Rule 403.

The judge excluded the video but permitted the government to introduce the still photos at trial. Rejecting the Rule 404(b) objection, the judge determined that the gov-

ernment's purpose for admitting the evidence—to show that Washington had recently possessed the same gun that the police recovered from the yard where they saw him toss it— was disconnected from any forbidden character-propensity inference. The judge relied on our decision in *Miller*, which affirmed the admission of similar evidence of the defendant's recent possession of the charged firearm—though there the evidence was testimonial, not photographic. 673 F.3d at 695. The judge also reasoned, however, that some parts of the video might present a risk of unfair prejudice, so he excluded the video itself and permitted the government to introduce the still photos instead.

The case proceeded to trial. Officers McDermott and McHale both testified that Washington walked away when their car approached, drew a chrome gun from the back of his waistband, and tossed it over a fence and into a residential yard. They also testified that they were concerned for their safety, although they did not draw their weapons or order Washington to the ground.

In addition to the two officers, the government also presented testimony from Special Agent David LaMonte from the Bureau of Alcohol, Tobacco, Firearms and Explosives, who examined the gun recovered from the yard and described its features. Agent LaMonte told the jury that the gun recovered by police and the pistol in the still photos from the video had many similarities. Both firearms had (1) the same overall size and shape; (2) an uncommon high-polish chrome finish; (3) trigger guards with a "similar design"; (4) a dark-colored left grip handle; (5) slide grips; (6) similar "illegible markings" and "obliterations"; and (7) raised front and rear sight posts. The recovered gun also

had a red dot near the safety switch, which coincided with a "red pigmentation" near a "blur" that looked like a safety switch on the gun in the video. Agent LaMonte acknowledged, however, that he had not inspected the actual gun that appeared in the video.

Washington testified and denied possessing a gun on the date in question. When asked about the YouTube video, he explained that he posed with what he believed to be a "prop" gun that just happened to resemble the one the police found. In closing argument the prosecutor maintained that the recovered gun and the gun in the still photos were one and the same.

The jury returned a verdict of guilty. Washington moved for a new trial, arguing that the still photos from the YouTube video "became the focus of the case and created the improper inference" that he "had a gun on the day of his arrest" because he "had a gun before." The judge denied the motion, reiterating that *Miller* controlled and the photos were admissible under Rule 404(b) as circumstantial evidence of the charged crime.

## II. Discussion

On appeal Washington challenges the judge's decision to admit the still photos of the YouTube video and the denial of his motion for a new trial, which rested largely on the underlying evidentiary ruling. We review both decisions for abuse of discretion. *See United States v. Truitt*, 938 F.3d 885, 889 (7th Cir. 2019) (evidentiary challenges); *United States v. Westmoreland*, 712 F.3d 1066, 1069 (7th Cir. 2013) (motion for new trial). That standard is difficult to surmount; we will reverse a decision to admit evidence "only if no reasonable

person would take the judge's view of the matter." *Truitt*, 938 F.3d at 889 (quotation marks omitted).

Washington argues that the only material purpose for admitting the photos from the YouTube video was to invite the jury to draw an improper propensity inference in violation of Rule 404(b), which bars the admission of evidence of a person's unrelated bad acts to prove that he has a certain character trait and acted in conformity with it on the occasion in question. So-called "other-act evidence" may be admitted for nonpropensity purposes, but the proponent has the burden to show that the evidence is relevant to a specific purpose *other than* character or propensity to behave in a certain way. *United States v. Ferrell*, 816 F.3d 433, 444 (7th Cir. 2015). If the proffered evidence supports a propensity inference, the judge may nonetheless admit it *provided that* its relevance to a permissible purpose "is established by 'some propensity-free chain of reasoning.'" *Id.* (quoting *United States v. Gomez*, 763 F.3d 845, 856, 860 (7th Cir. 2014) (en banc)). Once a proper purpose is established, the judge then determines under Rule 403 whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice. *Id.*

In *Miller* we approved the admission of evidence of the defendant's prior, uncharged possession of a gun under Rule 404(b) "where the prior possession was recent and involved the same gun." 673 F.3d at 695. Miller was charged with unlawfully possessing a firearm as a felon after a gun was found near his belongings in a room where he was staying. *Id.* at 691–92. A witness testified that she had seen him with the same gun about two months earlier, identifying it by its "dark, rusty grey color." *Id.* at 694. Miller argued

that this evidence invited the jury to infer that he was the type of person who unlawfully possessed guns and thus probably possessed a gun on the charged date. We disagreed, explaining that the "testimony was in fact circumstantial evidence of the charged crime." *Id.* at 695. Because the testimony "concerned the same gun, and the prior observed possession was relatively recent," it was relevant for the permissible nonpropensity purpose to show that the defendant "owned or at least had the ability to exercise control" over the charged gun. *Id.* We cautioned, however, that evidence of a defendant's prior possession of a *different* gun was substantially more likely to be used for the impermissible purpose of showing a propensity to possess guns. Likewise, as the prior possession is further removed in time, "it becomes less probative of possession on the date charged." *Id.*

Here, the government's purpose for offering the photos precisely tracks the purpose approved in *Miller*: to show that Washington had recent access to, and the ability to exercise control over, the same gun recovered from the yard where the officers said they saw him toss it. Because the evidence involved possession of the same gun, its relevance did not depend on an inference about Washington's propensity to possess firearms in general or any other forbidden inference about his character.

Washington argues that *Miller* should be limited to its facts: the defendant there was accused of constructive possession of a firearm based on the discovery of a gun among his belongings. In a constructive-possession case, it's easy to see how evidence of recent past possession of the same gun is probative on the question whether the defendant exercised

dominion and control over the charged firearm. This case, in contrast, involved a charge of *actual* physical possession of a firearm, not constructive possession.

We're not persuaded that the distinction between actual and constructive possession alters the relevance analysis. To prove that the defendant constructively possessed the charged firearm, the government must show that he "had both the power and intention to exercise dominion and control over" the firearm. *United States v. Lawrence*, 788 F.3d 234, 240 (7th Cir. 2015). Actual possession, on the other hand, "occurs when the defendant has immediate physical possession or control of a firearm." *United States v. Bloch*, 718 F.3d 638, 642 (7th Cir. 2013). Evidence of recent past possession of the same gun is relevant to prove *either* "dominion or control" of the charged firearm *or* actual possession of it on the charged occasion.

Washington relies on several out-of-circuit cases, but each one involved evidence of the defendant's access to a different firearm—not the same gun—or to firearms in general. *See United States v. Caldwell*, 760 F.3d 267, 273–74 (3d Cir. 2014); *United States v. Jones*, 484 F.3d 783, 785–87 (5th Cir. 2007); *United States v. Linares*, 367 F.3d 941, 945 (D.C. Cir. 2004). We were careful in *Miller* to emphasize that evidence of the defendant's past possession of a *different* firearm would be far more likely to implicate a forbidden character-propensity inference.

We also reject Washington's argument about unfair prejudice under Rule 403. The judge reasonably determined that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice but took the cautionary step of excluding the video itself to avoid its most

inflammatory and irrelevant features. What remained was a handful of still photos showing Washington holding a gun bearing remarkable resemblance to the gun recovered by the police from the yard where they said he tossed it. The evidence was recent and relevant to the nonpropensity purpose of proving his actual possession of *that very gun* on the charged occasion. The probative value of the evidence was substantial and not outweighed by the danger of unfair prejudice.

Finally, Washington contends that the government drifted into forbidden propensity territory during closing argument. "Just as introducing evidence to show propensity is improper, so too is arguing to a jury that it should convict a defendant based on the defendant's propensity to commit a crime." *United States v. Richards*, 719 F.3d 746, 764 (7th Cir. 2013) (quotation marks omitted). But that did not happen here. The prosecutor summarized the testimony of Agent LaMonte, who emphasized the many similarities he observed between the gun the police recovered and the gun in the YouTube video. The prosecutor argued only that this evidence showed that Washington had recent access to and control over the gun that the officers saw him discard, not that he had a propensity to possess firearms and so must be guilty of the charged offense. The government's argument stayed within a purpose permitted by Rule 404(b). Because the photos of the YouTube video were properly admitted and the government avoided any propensity suggestion, a new trial is not warranted. *See United States v. Carson*, 870 F.3d 584, 593 (7th Cir. 2017).

A<small>FFIRMED</small>